JAMES REILLY DOLAN
Acting General Counsel

ROBERT J. QUIGLEY, Cal. Bar No. 302879
rquigley@ftc.gov
BARBARA CHUN, Cal. Bar No. 186907
bchun@ftc.gov
MILES D. FREEMAN, Cal. Bar No. 299302
mfreeman@ftc.gov
Federal Trade Commission
10990 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Tel: (310) 824-4300
Fax: (310) 824-4380
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

[Additional Attorneys for Plaintiffs Listed on Signature Pages]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION; STATE OF ARIZONA *EX REL.* MARK BRNOVICH, ATTORNEY GENERAL; THE PEOPLE OF THE STATE OF CALIFORNIA; STATE OF INDIANA; THE PEOPLE OF THE STATE OF MICHIGAN; STATE OF NORTH CAROLINA; and STATE OF WISCONSIN,<br><br>Plaintiffs,<br><br>v.<br><br>FRONTIER COMMUNICATIONS CORPORATION, a Delaware | Case No. 2:21-cv-4155<br><br>COMPLAINT FOR PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, MONETARY RELIEF AND OTHER RELIEF |

corporation; FRONTIER COMMUNICATIONS PARENT, INC., a Delaware corporation; FRONTIER COMMUNICATIONS INTERMEDIATE, LLC, a Delaware limited liability company; FRONTIER COMMUNICATIONS HOLDINGS, LLC, a Delaware limited liability company,

Defendants.

Plaintiffs, the Federal Trade Commission ("FTC"), the Attorneys General of the States of Arizona, Indiana, Michigan, North Carolina, and Wisconsin, and the People of the State of California, by and through the District Attorneys of Los Angeles County and Riverside County (collectively, "Plaintiffs"), for their Complaint allege:

1.     The FTC brings this action under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), which authorizes the FTC to seek, and the Court to order, temporary, preliminary, and permanent injunctive relief and other relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

2.     This action is also brought, in their representative and official capacities as provided by state law, by the Attorneys General of Arizona, Indiana, Michigan, North Carolina, and Wisconsin, and by the People of the State of California by and through the District Attorneys of Los Angeles County and Riverside County.  The Plaintiffs identified in this paragraph are referred to collectively as the "Plaintiff States."

3.     The Plaintiff States bring this action pursuant to consumer protection and business regulation authority conferred on their Attorneys General, and/or state or county agencies or offices by state law, and/or pursuant to *parens patriae* and/or common law authority.  As described below, many of these states' laws authorize

the Plaintiff States to seek temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief, to prevent and/or to stop ongoing deception or unfair acts or practices caused by Defendants' state law violations.  These laws also authorize the Plaintiff States to obtain civil penalties, attorneys' fees, expenses, and costs.

4.      The State of Arizona *ex rel.* Mark Brnovich, the Attorney General of Arizona (the "State of Arizona"), brings this action pursuant to the Arizona Consumer Fraud Act, Arizona Revised Statutes ("A.R.S.") §§ 44-1521 to -1534.

5.      Plaintiff, the People of the State of California, by and through George Gascón, District Attorney of Los Angeles County, and Michael A. Hestrin, District Attorney of Riverside County, bring this action against Defendants for violation of the California Unfair Competition Law ("UCL") (Bus. & Prof. Code § 17200 *et seq.*) and the California False Advertising Law ("FAL") (Bus. & Prof. Code § 17500 *et seq.*).

6.      The Indiana Attorney General brings this action on behalf of the State of Indiana  for violations of the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5, *et seq.*, and is authorized to seek injunctive and statutory relief.

7.       Plaintiff Michigan Attorney General Dana Nessel brings this action on behalf of the People of the State of Michigan for violations of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.*

8.      Plaintiff State of North Carolina, acting by and through its Attorney General Joshua H. Stein, brings this action in the public interest and pursuant to Chapters 75 and 114 of the North Carolina General Statutes.  The State of North Carolina, by and through the Attorney General, is charged with, *inter alia*, enforcing North Carolina's Unfair or Deceptive Trade Practices Act, N.C.G.S. §§ 75-1.1, *et seq.*, which is intended to protect members of the public from being harmed by unethical and unscrupulous business practices, including deceptive

statements and conduct, carried out in North Carolina commerce.  North Carolina's Unfair or Deceptive Trade Practices Act authorizes the State of North Carolina to seek temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, civil penalties, attorneys' fees, expenses, costs, and other equitable relief for Defendants' acts or practices in violation of N.C.G.S. § 75-1.1.

9.     The Wisconsin Attorney General brings this action on behalf of the State of Wisconsin. The Wisconsin Attorney General is vested with the authority to enforce the Wisconsin Deceptive Trade Practices Act and is required to furnish legal services to the Wisconsin Department of Agriculture, Trade and Consumer Protection to enforce, among other laws, the Deceptive Trade Practices Act and laws prohibiting unfair billing, unfair trade practices, and deceptive telecommunications advertising.  Wis. Stats. §§ 100.18(11)(d) and 165.25(4)(ar). The Wisconsin Attorney General is permitted to seek permanent injunctive relief and restitution to consumers.  Wis. Stats. §§ 100.18(11)(d), 100.195(5m)(c), 100.20(6), and 100.207(6)(b).  Wisconsin law also authorizes the Attorney General to obtain civil forfeitures, consumer protection surcharges, supplemental forfeitures, attorneys' fees, expenses, and costs.  Wis. Stats. §§ 100.207(6)(c), 100.26, 100.261, 100.263, and 100.264.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.  This Court has supplemental jurisdiction over the subject matter of the state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(2), (d), and 15 U.S.C. § 53(b).

12.     Defendants have transacted business within the State of California and within the geographical boundaries of this District, including in the Counties of

Los Angeles and Riverside, at all relevant times to this Complaint.  The violations of law described herein occurred in, among other locations, the Counties of Los Angeles and Riverside, and elsewhere in the State of California.

## PLAINTIFFS

13.    The FTC is an independent agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys.  15 U.S.C. §§ 41–58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

14.    The State of Arizona is authorized to bring this action pursuant to the Arizona Consumer Fraud Act (the "Arizona CFA"), A.R.S. §§ 44-1521 to -1534 to obtain injunctive relief to permanently enjoin and prevent the unlawful acts and practices alleged in this Complaint, and to obtain other relief, including restitution, disgorgement of profits, gains, gross receipts, or other benefits, civil penalties, and costs and attorneys' fees.

15.    The People of the State of California, by and through George Gascón, District Attorney of Los Angeles County, and Michael A. Hestrin, District Attorney of Riverside County, are authorized to enjoin repeated and persistent fraudulent, unlawful, deceptive, and misleading business conduct under the California Unfair Competition Law (Bus. & Prof. Code § 17200 *et seq.*) and the California False Advertising Law (Bus. & Prof. Code § 17500 *et seq.*) to obtain equitable or other appropriate relief, including restitution, civil penalties, and an injunction as may be appropriate.

16.    The Indiana Attorney General on behalf of the State of Indiana is authorized to bring this action under Ind. Code § 24-5-0.5-4(c), and may obtain injunctive relief, consumer restitution, civil penalties, costs and all other just and proper relief under the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5, *et seq.*

17.     The Michigan Attorney General, on behalf of the People of Michigan, is authorized to bring this action under Mich. Comp. Laws § 445.905 and § 445.910, and may obtain injunctive relief, actual damages, and other appropriate relief under the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq*.

18.     The Attorney General of the State of North Carolina has the power and the duty, pursuant to N.C.G.S. § 75-9, to investigate the affairs of all corporations or persons doing business in the State of North Carolina and, pursuant to N.C.G.S. § 75-15, upon his ascertaining that the laws have been violated so as to render a corporation liable to prosecution in a civil action, to prosecute such action in the name of the State, and to prosecute all officers or agents or employees of such corporations, whenever in his opinion the interests of the public require it.

19.     The Wisconsin Attorney General is vested with the authority to enforce the Wisconsin Deceptive Trade Practices Act and is required to furnish legal services to the Wisconsin Department of Agriculture, Trade and Consumer Protection to enforce, among other laws, Wisconsin's Deceptive Trade Practices Act, as well as laws prohibiting unfair billing, unfair trade practices, and deceptive telecommunications advertising.  Wis. Stats. §§ 100.18(11)(d) and 165.25(4)(ar). Wisconsin law permits the Wisconsin Attorney General to seek permanent injunctive relief and restitution.  Wis. Stats. §§ 100.18(11)(d), 100.195(5m)(c), 100.20(6), and 100.207(6)(b).  Wisconsin law also authorizes the Attorney General to obtain civil forfeitures, consumer protection surcharges, supplemental forfeitures, attorneys' fees, expenses, and costs.  Wis. Stats. §§ 100.207(6)(c), 100.26, 100.261, 100.263, and 100.264.

20.     To summarize, the Plaintiff States bring this action pursuant to consumer protection and business regulation authority conferred on them by the following statutes and/or pursuant to *parens patriae* and/or common law authority:

| STATE | STATUTORY AUTHORITY |
| --- | --- |
| Arizona | Ariz. Rev. Statutes §§ 44-1521 to -1534. |
| California (Through the Los Angeles County & Riverside County District Attorneys) | Cal. Bus. & Prof. Code § 17200 *et seq.*; Cal. Bus. & Prof. Code § 17500 *et seq.* |
| Indiana | Ind. Code § 24-5-0.5-1 *et seq.* |
| Michigan | Mich. Comp. Laws §§ 445.905 and 445.910. |
| North Carolina | N.C.G.S. § 75-1.1 *et seq.* |
| Wisconsin | Wis. Stat. § 165.25(4)(ar); Wis. Stats. §§ 100.18(11)(d), 100.195(5m)(c), 100.20(6), and 100.207(6)(b); Wis. Stats. §§ 100.207(6)(c), 100.26, 100.261, 100.263, and 100.264. |

## DEFENDANTS

21.     Defendant Frontier Communications Corp. is a Delaware corporation with its principal place of business in Connecticut.  Frontier has transacted business in this District and throughout the United States.

22.     On April 14, 2020, Frontier Communications Corp. and approximately 100 affiliated entities filed petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, in the United States Bankruptcy Court for the Southern District of New York.  The Bankruptcy Court ordered the joint administration of the related cases under Chapter 11 Case No. 20-22476 (Jointly Administered) (Bankr. S.D.N.Y.) (the "Bankruptcy Case").  Frontier

Communications Corp. continued to operate its business as a debtor-in-possession during the pendency of the Bankruptcy Case.

23.     On April 30, 2021, Frontier Communications Corp. and its affiliated entities filed a notice stating that they satisfied the requirements for their plan of reorganization to become effective.  Frontier Communications Corp. stated shortly before emerging from bankruptcy that it would dissolve and cease to exist as a legal entity on or after the effective date.  As of May 18, 2021, it was still listed as active on the California Secretary of State website and in "good standing" on the Delaware Secretary of State website.  On April 30, 2021, Frontier Communications Corp. emerged as the following reorganized entities:  Frontier Communications Parent, Inc., Frontier Communications Intermediate, LLC, and Frontier Communications Holdings, LLC (collectively, "Reorganized Frontier").

24.     Defendant Frontier Communications Parent, Inc. is a Delaware corporation with its principal place of business in Connecticut.

25.     Defendant Frontier Communications Intermediate, LLC is a Delaware limited liability company with its principal place of business in Connecticut.

26.     Defendant Frontier Communications Holdings, LLC is a Delaware limited liability company with its principal place of business in Connecticut.

27.     In connection with Reorganized Frontier's emergence from bankruptcy, substantially all assets of Frontier Communications Corp. vested in Reorganized Frontier.

28.     In connection with Frontier Communications Corp.'s bankruptcy proceedings and related state and federal regulatory proceedings, Frontier Communications Corp. and its affiliated entities represented that Reorganized Frontier would substantially continue, and assume responsibility for, the business operations performed and overseen by Frontier Communications Corp. in

California and throughout the United States prior to emergence from bankruptcy.[1] These operations have caused and continue to cause the acts and practices that are the subject of this Complaint.[2]  For ease of discussion, all references to "Frontier" in the following paragraphs shall mean Frontier Communications Corp. before April 30, 2021, and Reorganized Frontier on and after April 30, 2021, unless otherwise noted.

29.     Plaintiffs' action, including the enforcement of a judgment other than a money judgment obtained in this action, is not stayed by 11 U.S.C. § 362(a)(1), (2), (3), or (6) because it is an exercise of Plaintiffs' police or regulatory powers as governmental units according to 11 U.S.C. § 362(b)(4) and, thus, falls within an exception to the automatic stay.

## COMMERCE

30.     At all times relevant to this Complaint, Frontier has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

---

[1] Reorganized Frontier has not assumed certain obligations of Frontier Communications Corp., which are outlined in the plan of reorganization.  *See* Fifth Amended Joint Plan of Reorganization of Frontier Communications Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Bankr. ECF No. 1005-1).  However, those limitations are not relevant to the claims at issue in this case.  *See* note 2 *infra*.

[2] The claims asserted in this Complaint were not discharged in the Bankruptcy Case.  *See* Fifth Amended Joint Plan of Reorganization of Frontier Communications Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, at Article VIII.H (Bankr. ECF No. 1005-1); Findings of Fact, Conclusions of Law, and Order Confirming The Fifth Amended Joint Plan of Reorganization of Frontier Communications Corporation and Its Debtor Affiliates Pursuant To Chapter 11 of The Bankruptcy Code, ¶ 105 (Bankr. ECF No. 1005). Thus, both Frontier Communications Corp. and Reorganized Frontier are proper parties.

## DEFENDANTS' BUSINESS ACTIVITIES

31.    Frontier is an Internet service provider (ISP) with more than three million current Internet service subscribers across the country.

32.    Frontier provides Internet service principally using two categories of technology: digital subscriber line (DSL), which transmits data over copper telephone wires, and fiber-optic, which transmits data over thin strands of glass.

33.    Frontier currently provides residential DSL Internet service to approximately 1.3 million consumers across 25 states.  In addition, since January 1, 2015, hundreds of thousands of consumers nationwide have discontinued their subscriptions to Frontier's residential DSL Internet service.

34.    Frontier currently provides, and has previously provided, residential DSL Internet service to tens or hundreds of thousands of consumers located within the geographic boundaries of each of the States of Arizona, California, Indiana, Michigan, North Carolina, and Wisconsin.

35.    Many of Frontier's DSL subscribers reside in rural areas.  According to a September 2020 report of the Federal Communications Commission, many consumers in the least densely populated regions of the country use DSL service to connect to the Internet.

36.    Frontier offers consumers DSL or fiber-optic Internet as a stand-alone service, or packaged with other services, including telephone and television. Frontier provides Internet service on a month-to-month subscription basis, but requires consumers to commit to longer service terms for certain promotions.

37.    Frontier offers consumers multiple tiers of DSL and fiber-optic Internet service.  These tiers of service correspond to the maximum speed at which Frontier represents consumers can download data over Frontier's network. Frontier generally charges consumers higher monthly rates for higher-speed tiers of service.

1

*Frontier's Marketing and Sale of DSL Internet Service Speed Tiers*

2

38.    Frontier makes Internet speed a prominent selling point for its

3

residential DSL service.

4

39.    According to research commissioned by Frontier, consumers consider

5

Internet speed to be one of the most important decisionmaking factors when they

6

compare competing ISPs' offerings and select Internet service for their homes.

7

40.    Certain activities that consumers commonly perform over the Internet

8

require larger transfers of data, including telecommuting, streaming video, gaming,

9

and the use of multiple devices on the same connection.  At lower download

10

speeds, consumers attempting to perform these activities may experience poor

11

performance, or they may be unable to perform the activities at all.

12

41.    Since at least January 1, 2015, Frontier has in numerous instances

13

nationally advertised, marketed, offered, and sold residential DSL Internet service

14

in tiers corresponding to "speeds" or "max speeds."  Frontier frequently quantifies

15

these download speeds in Megabits per second, or "Mbps."

16

42.    The Megabit per second is a standard metric many ISPs, including

17

Frontier, use to quantify the speed of Internet service.  This refers to the rate at

18

which millions of "bits," or units of data, transfer over a connection.

19

43.    Since at least January 1, 2015, the different DSL Internet speed tiers

20

that Frontier has nationally advertised, marketed, offered, and sold have included:

21

6 Mbps (called "Max" or "Core" DSL service); 12 Mbps (called "Ultra" DSL

22

service); 18 Mbps (called "Plus" DSL service); and 24 or 25 Mbps (called

23

"Ultimate" or "Elite" DSL service).  Frontier also offers lower-speed (1 or 3 Mbps)

24

and higher-speed (45 Mbps or more) tiers of DSL service in certain markets.

25

44.    In some instances, when referencing these speed tiers, Frontier's

26

advertisements have represented that consumers can receive DSL Internet service

27

"up to" or "as fast as" a particular speed quantified in Mbps.

28

45.     Frontier has nationally advertised, marketed, offered, and sold DSL Internet in speed tiers using a variety of methods.  These include digital display advertising; Internet search advertising; and shared and direct mail.

46.     Frontier has directed digital display advertisements for specific DSL Internet service speed tiers towards consumers.  For example, in 2018, Frontier disseminated digital display advertisements for its "Frontier® 18 Mbps High-Speed Internet Plus" speed tier, generating millions of advertisement impressions:



**Figure A**

47.     Frontier's direct mail advertisements have also represented that consumers could receive DSL service at particular speeds quantified in Mbps.

48.     For example, an August 2018 mailer that Frontier distributed to hundreds of thousands of households nationwide reads, "$12 for 12 Mbps internet - Don't pay megabucks for megabytes":



**Figure B**

49.    A number of Frontier's advertisements, including the one in Figure B above, state, in tiny, inconspicuous print separated from the main message of the advertisement:  "Maximum service speed is not available to all locations and the maximum speed for service to your location may be lower than the maximum speed in this range.  Service speed is not guaranteed and will depend on many factors.  Your ability to stream may be limited by speeds available in your area."  The arrow in Figure B above denotes where this text appears in the advertisement.

50.    When Frontier sends mail to a consumer's residential address, or displays digital advertisements to consumers with residential addresses known to Frontier, Frontier has access to information indicating that it is unable to provide

certain of its DSL Internet speed tiers to some consumers, based on factors such as the address's distance from Frontier's networking equipment, which Frontier can easily compute or estimate for many addresses.

51.     In numerous instances, Frontier has sent consumers advertisements for DSL Internet service at speed tiers that Frontier could not provide to them.

52.     In order to subscribe to Frontier's Internet service, consumers must generally interact with Frontier's representatives, either over the telephone or using a "chat" tool on Frontier's website.  Frontier's advertisements direct consumers to telephone numbers and web addresses to request service.

53.     Frontier has directed its sales representatives to offer consumers a menu of available Internet service packages and speed tiers, and to describe the download speed associated with each offered tier of service, quantified in Mbps.

54.     Frontier solicits the consumer's residential address during these interactions and at the point of sale.  Frontier provides its sales representatives with software tools that they use to offer a set of speed tiers to the consumer, based in part on the consumer's address.

55.     During these interactions and at the point of sale—just as at the point of sending certain mailers or geo-targeted advertisements—Frontier has access to information indicating that it is unable to provide certain of its DSL Internet speed tiers to consumers based on their residential addresses.

56.     In numerous instances, Frontier or its sales representatives have offered consumers, and those consumers have accepted, subscriptions for DSL Internet service at speed tiers that Frontier could not provide to those consumers.

57.     After a consumer has accepted one of Frontier's offers over the phone or on Frontier's website and subscribed to a tier of Internet service, Frontier connects that consumer's home to Frontier's network.  Frontier may establish this connection by sending a technician to the consumer's home.  In other instances, Frontier instead establishes this connection remotely.

-14-

58.    In numerous instances, Frontier does not provide consumers with any written documentation regarding their DSL Internet service, either at the point of sale or when Frontier commences service remotely or through its technicians.

59.    Frontier sends monthly bills to DSL subscribers, either electronically or by mail.  Frontier bills DSL subscribers based on the service package to which they subscribe, including speed tier.  Frontier's bills include a line item for the package subscribed to, followed by a dollar amount.

60.    In numerous instances, such as when consumers sign up for Internet service over the telephone, Frontier's bills are the first written correspondence consumers receive memorializing the Internet service package and speed tier to which they subscribed.  The billing statements indicate the service package by name but do not indicate the corresponding, advertised Internet speed for that package.

*Frontier's Practice of Providing Slower-Than-Purchased DSL Speeds*

61.    Since at least January 1, 2015, Frontier has in numerous instances advertised, marketed, offered, or sold DSL Internet service at tiers corresponding to speeds that Frontier did not, and often could not, provide to consumers.

62.    Indeed, network limits imposed by Frontier prevent numerous consumers from receiving DSL Internet service at speeds corresponding to the tiers of service they pay for.

63.    Frontier imposes one such network limit when Frontier internally "provisions," or limits, the DSL Internet speeds it provides to each home connected to its network.  A home cannot receive DSL Internet service in excess of the speed Frontier provisions to it.

64.    Frontier purports to set its provisioned speeds in part to enforce the distinctions between the speed tiers it offers to consumers, and in part to reflect what Frontier predicts to be the limits on the speeds Frontier is technically capable of providing to a given consumer.

65.     For example, because a DSL signal becomes weaker the further it gets from the source of the transmission, the speed that Frontier is capable of providing to consumers whose homes are distant from Frontier's central networking equipment is slower.  The type of networking equipment Frontier uses to provide service to a particular consumer, including the DSL access multiplexer, or "DSLAM," also limits the speed Frontier can provide to that consumer.

66.     Frontier provisions DSL Internet speed at the time it connects a consumer's home for service, whether remotely or via an on-site technician.

67.     Frontier does not, as a general matter, inform its subscribers of their provisioned speeds, or provide subscribers with the means to learn their provisioned speeds.

68.     In numerous instances, Frontier has provisioned consumers for slower speeds than the tiers of DSL Internet service to which they are subscribed, preventing those consumers from receiving service at speeds corresponding to the tier of service they pay for.

69.     Provisioning sets an upper limit on speed, but not a lower bound: Even when Frontier provisions a consumer for a particular speed, this does not guarantee that the consumer will receive service at that speed.

70.     In numerous instances, Frontier has provided consumers DSL Internet service at speeds consistently slower than even the provisioned limits set for those consumers, preventing these consumers from ever, or for more than *de minimis* durations, receiving the maximum speeds Frontier represents these consumers can achieve for the speed tiers to which they subscribe.  This has occurred due to factors known to Frontier and within Frontier's control, including physical factors, such as long distances between Frontier's central networking equipment and consumers' homes, and technical factors, such as low-bandwidth, obsolete, and/or overloaded DSLAMs and networking equipment.

71.     Frontier's misrepresentations regarding the DSL Internet speed tiers to which numerous consumers are subscribed are not limited to those made at or near the point of sale, but continue on an ongoing basis, for example, in Frontier's monthly billing statements.

72.     In numerous instances, the DSL speed tiers Frontier tells consumers they are subscribed to and the speeds Frontier actually provides those consumers substantially differ.  These substantial differences negatively impact download speeds, as quantified in Mbps; consumers' qualitative experience of Internet performance and usage; or both.

73.     Indeed, in numerous instances, the speeds provisioned and provided to consumers correspond with slower, and often less expensive, tiers of DSL service offered by Frontier.

74.     In early 2019, a management consulting firm analyzed, at Frontier's direction and with Frontier's participation, Frontier's proprietary network data and internal records for nearly 1.5 million then-current DSL subscribers.  This analysis found that approximately 440,000 of Frontier's DSL subscribers, or nearly 30% of the population analyzed, were "potentially" "oversold" on speed tiers that exceeded the actual speeds Frontier provided to them.

75.     In numerous instances, Frontier has billed, charged, collected, or attempted to collect payment from consumers for more expensive and higher-speed tiers of DSL Internet service than Frontier provisions for, provides, has provided, or has been capable of providing to such consumers.

76.     Since at least January 1, 2015, thousands of consumers around the country, including numerous consumers located within the geographic boundaries of each of the States of Arizona, California, Indiana, Michigan, North Carolina, and Wisconsin, have complained to Frontier and to government agencies that Frontier was not providing DSL Internet service at speeds corresponding to the tiers of service the consumers paid for.

77.     Numerous complaining consumers referenced in Paragraph 76 have described service that failed to support typical usage and activities that consumers should have been able to perform adequately at the speed tiers to which they were subscribed.  Numerous complaining consumers have also conducted speed tests using third-party online tools that confirmed they were experiencing speeds far below their tier.  These tests did not reveal, however, that these lower speeds may have been due to factors wholly within Frontier's control.

78.     Since 2015, the Attorneys General of West Virginia, New York, Nevada, Pennsylvania, Washington, and Minnesota have brought enforcement actions alleging that Frontier misrepresented DSL Internet speeds to consumers. Frontier has settled each of these actions while denying any wrongdoing.

79.     Despite these settlements, Frontier has failed to remedy its practices, and consumers continue to be harmed nationwide, and within the geographic boundaries of Arizona, California, Indiana, Michigan, North Carolina, and Wisconsin.

80.     Based on the facts and violations of law alleged in this Complaint, the Plaintiffs have reason to believe that Frontier is violating or is about to violate laws enforced by the Commission and the respective Plaintiff States.

## VIOLATIONS OF THE FTC ACT

81.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

82.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

83.     Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

## Count I
## Misrepresentation of DSL Internet Speeds
### (By Plaintiff FTC Against All Defendants)

84.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of DSL Internet service subscriptions described in Paragraphs 31–80, Frontier has represented, directly or indirectly, expressly or by implication, that Frontier would provide to consumers certain Internet service speeds, including download speeds.

85.     In truth and in fact, in numerous instances in which Frontier has made the representations set forth in Paragraph 84, Frontier did not provide, or could not provide, Internet service at the speeds that Frontier represented to consumers.

86.     Therefore, the representations as set forth in Paragraph 84 are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count II
## Unfair Billing Practices
### (By Plaintiff FTC Against All Defendants)

87.     In numerous instances, in connection with the sale and providing  of DSL Internet service described in Paragraphs 31–80, Frontier has subscribed consumers to, and billed, charged, collected or attempted to collect charges from consumers for a higher and more costly level of Internet service than Frontier actually provided or was capable of providing to these consumers.

88.     Frontier's actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

89.     Therefore, Frontier's acts or practices as set forth in Paragraphs 31–80 constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a), (n).

## VIOLATIONS OF ARIZONA STATE LAW

### Count III

### Violations of the Arizona Consumer Fraud Act, A.R.S. §§ 44-1521 to -1534

### (By Plaintiff State of Arizona Against All Defendants)

90.     The State of Arizona realleges all prior allegations of this Complaint as though fully set forth in Paragraphs 31–80.

91.     The conduct described in the preceding paragraphs of this Complaint constitutes deception, deceptive or unfair acts or practices, fraud, false pretenses, false promises, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of merchandise in violation of A.R.S. §§ 44-1521 to -1534, including, but not limited to:

a.     Frontier engaged in deceptive and unfair acts and practices by representing to Arizona consumers, directly or indirectly, expressly or by implication, that Frontier would provide to consumers certain Internet service speeds, including download speeds.  In truth and in fact, in numerous instances in which Frontier has made the representations set forth in Paragraphs 31-80, Frontier did not provide, or could not provide, Internet service at the speeds that Frontier represented to consumers;

b.     Frontier engaged in the concealment, suppression, or omission of material facts by failing to disclose to Arizona consumers in communications that Frontier would not provide to consumers certain Internet service speeds, including download speeds;

c.     Frontier engaged in deceptive and unfair acts and practices by subscribing Arizona consumers to, and billed, charged, collected or attempted to collect charges from Arizona consumers for a higher and more costly level of Internet service than Frontier actually provided or was capable of providing to these consumers;

d.     Frontier engaged in the concealment, suppression, or omission of material facts by failing to disclose to Arizona consumers that Frontier would bill, charge, collect, or attempt to collect charges from Arizona consumers for a higher and more costly level of Internet service than Frontier actually provided or was capable of providing to these consumers;

e.     Frontier engaged in deceptive and unfair acts and practices by advertising Internet service, through online and mailed advertisements, at speeds that Frontier was incapable of providing to those consumers; and

f.     Frontier engaged in the concealment, suppression, or omission of material facts by failing to disclose to Arizona consumers in online and mailed advertisements that it could not provide the Internet speeds it was advertising to those consumers.

92.     While engaging in the acts and practices alleged in this Complaint, Frontier knew or should have known that that its conduct was of the nature prohibited by A.R.S. § 44-1522, subjecting itself to enforcement and penalties as provided in A.R.S. § 44-1531(A).

93.     With respect to the concealments, suppressions, or omissions of material fact described above, Frontier did so with intent that others rely on such concealments, suppressions, or omissions.

94.     With respect to the unfair acts and practices described above, these acts and practices caused or were likely to cause substantial injuries to consumers that were not reasonably avoidable by consumers and were not outweighed by countervailing benefits to consumers or to competition.

## VIOLATIONS OF CALIFORNIA STATE LAW

### Count IV

**Violation of California Business and Professions Code Sections 17500 *et seq.***

**(By Plaintiffs Los Angeles County District Attorney & Riverside County District Attorney on Behalf of the People of the State of California Against All Defendants)**

95.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of DSL Internet service subscriptions described in Paragraphs 31–80, Frontier has represented, directly or indirectly, expressly or by implication, that Frontier would provide to consumers certain Internet service speeds, including download speeds.

96.     In truth and in fact, in numerous instances in which Frontier has made the representations set forth in Paragraph 95, Frontier did not provide, or could not provide, Internet service at the speeds that Frontier represented to consumers.

97.     In numerous instances, in connection with the sale and providing of DSL Internet service described in Paragraphs 31–80, Frontier has subscribed consumers to, and billed, charged, collected or attempted to collect charges from consumers for a higher and more costly level of Internet service than Frontier actually provided or was capable of providing to these consumers.

98.     Frontier's actions caused or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

99.     Therefore, within three years preceding the filing of this Complaint, Frontier made untrue and/or misleading statements to the public in violation of California Business and Professions Code § 17500.

**Count V**

**Violation of California Business and Professions Code Sections 17200 *et seq.***

**(By Plaintiffs Los Angeles County District Attorney & Riverside County District Attorney on Behalf of the People of the State of California Against All Defendants)**

100.   Plaintiffs Los Angeles County District Attorney and Riverside County District Attorney on behalf of the People of the State of California reallege and incorporate each and every allegation in paragraphs 31–80, inclusive, as though set forth here in full.

101.   Within four years preceding the filing of this Complaint, Frontier violated California Business and Professions Code § 17200 by engaging in business acts or practices that were unlawful, unfair, deceptive, or misleading, including, but not limited to, the following acts or practices:

     A. Violating California Business and Professions Code § 17500;

     B. Violating Section 5 of the FTC Act, 15 U.S.C. § 45(a), (n).

## VIOLATIONS OF INDIANA STATE LAW

**Count VI**

**Violations Of The Indiana Deceptive Consumer Sales Act**

**(By Plaintiff State of Indiana Against All Defendants)**

102.   The State of Indiana re-alleges and incorporates by reference the allegations contained in Paragraphs 31–80 of this Complaint.

103.   Since at least 2017, numerous consumers have also complained to the Indiana Attorney General that Frontier failed to provide sufficiently reliable Internet service, in addition to the above mentioned complaints, such that service was either intermittent or wholly unavailable.

104.   Frontier billed numerous Indiana consumers for Internet service not received and, for some consumers, past the cancellation date.

105.   Frontier's transactions with consumers to provide Internet services are "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(1).

106.   Frontier is a "supplier" within the meaning of Ind. Code § 24-5-0.5-2(a)(3).

107.   Frontier, in connection with advertising, promoting, offering for sale, or sale of Internet services, by misrepresenting, implicitly or explicitly, the availability of Internet speeds or reliability of Internet services provided to Indiana consumers, committed unfair, abusive, or deceptive acts, omissions, or practices in violation of Ind. Code § 24-5-0.5-3(a).

108.   Frontier, by representing to Indiana consumers that the Internet speeds available were of a particular standard or quality, which they knew or should have reasonably known that maximum or average Internet speeds for some Indiana consumers could not reach the represented standard or quality, committed unfair, abusive, or deceptive acts, omissions, or practices in violation of Ind. Code § 24-5-0.5-3(b)(2).

109.   Frontier committed the acts alleged with knowledge of their deceptive nature, and therefore committed knowing violations of the Indiana Deceptive Consumer Sales Act.

110.   Frontier committed the deceptive acts alleged as a part of a scheme, artifice, or device with intent to defraud or mislead, and therefore committed incurable deceptive acts under the Indiana Deceptive Consumer Sales Act.

## VIOLATIONS OF MICHIGAN STATE LAW
### Count VII
### Violations of the Michigan Consumer Protection Act
### (Brought by Plaintiff People of Michigan Against All Defendants)

111.   The Michigan Attorney General is authorized to bring this claim under Mich. Comp. Laws §§ 445.905 and 445.910.  The Attorney General may

obtain injunctive relief, actual damages, and other appropriate relief under the Michigan Consumer Protection Act (MCPA), Mich. Comp. Laws § 445.901 *et seq*.

112.   As described in this Complaint, Frontier has engaged in the following unfair, unconscionable, and deceptive trade practices that are made unlawful under the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903(1):

(e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

(g) Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented.

(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

(y) Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

113.   As described above, in numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of DSL Internet service subscriptions described in Paragraphs 31–80, Frontier has represented, directly or indirectly, expressly or by implication, that Frontier would provide to consumers certain Internet service speeds, including download speeds.

114.   In truth and in fact, in numerous instances in which Frontier has made the representations set forth in Paragraph 113, Frontier did not provide, or could not provide, Internet service at the speeds that Frontier represented to consumers.

115.   Therefore, these representations and practices as set forth in Paragraphs 31–80 are unfair, unconscionable, and deceptive trade practices that are made unlawful under the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903(1).

### **VIOLATIONS OF NORTH CAROLINA STATE LAW**

116.   N.C.G.S. § 75-1.1 prohibits "unfair or deceptive acts or practices in or affecting commerce."

117.   Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by N.C.G.S. § 75-1.1.

118.   Acts or practices are unfair under N.C.G.S. § 75-1.1 when they offend established public policy, as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

### Count VIII

### Misrepresentation of DSL Internet Speeds

### (By Plaintiff State of North Carolina Against All Defendants)

119.   The allegations contained in Paragraphs 31 through 80 are incorporated by reference as if they were set out at length herein.

120.   As described in Paragraphs 31 through 80, in numerous instances and in connection with the advertising, marketing, promotion, offering for sale, or sale of DSL Internet service subscriptions, Frontier has represented, directly or indirectly, expressly or by implication, that Frontier would provide to consumers certain Internet service speeds, including download speeds.

121.   In truth and in fact, in numerous instances in which Frontier has made the representations set forth in Paragraph 120, Frontier did not provide, or could not provide, Internet service at the speeds that Frontier represented to consumers.

122.   Therefore, Frontier's representations as set forth in Paragraph 120 are false or misleading and constitute unfair or deceptive trade practices, are prohibited by N.C.G.S. § 75-1.1, and are in violation of North Carolina's Unfair or Deceptive Trade Practices Act.

<b>Count IX</b>

<b>Unfair Billing Practices</b>

<b>(By Plaintiff State of North Carolina Against All Defendants)</b>

123.   The allegations contained in Paragraphs 31 through 80 are incorporated by reference as if they were set out at length herein.

124.   In numerous instances, in connection with the sale and providing of DSL Internet service described in Paragraphs 31 through 80, Frontier has subscribed consumers to, and billed, charged, collected or attempted to collect charges from consumers for a higher and more costly level of Internet service than Frontier actually provided or was capable of providing to these consumers.

125.   Frontier's actions offend established public policy, and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

126.   Therefore, Frontier's acts or practices as set forth in Paragraphs 31 through 80 constitute unfair or deceptive trade practices, are prohibited by N.C.G.S. § 75-1.1, and are in violation of North Carolina's Unfair or Deceptive Trade Practices Act.

<b><u>VIOLATIONS OF WISCONSIN STATE LAW</u></b>

<b>WISCONSIN'S DECEPTIVE TRADE PRACTICES ACT</b>

127.   Wisconsin Stat. § 100.18(1) provides, in part, that no person or entity intending to sell or increase the consumption of any service, or induce the public to enter into any contract relating thereto, may make any untrue, deceptive, or misleading advertisement, announcement, statement, or representation in conjunction with such transaction.

## Count X

## Misrepresentation of DSL Internet Speeds

## (By Plaintiff State of Wisconsin Against All Defendants)

128.   Plaintiff Wisconsin Attorney General adopts, incorporates by reference, and realleges Paragraphs 31–80 as if fully set forth herein.

129.   In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of DSL Internet service subscriptions described in paragraphs 31–80, Frontier has represented, directly or indirectly, expressly or by implication, that Frontier would provide to consumers certain Internet service speeds, including download speeds.

130.   In truth and in fact, in numerous instances in which Frontier has made the representations set forth in Paragraph 129, Frontier did not provide, or could not provide, Internet service at the speeds that Frontier represented to consumers.

131.   Therefore, the representations set forth in Paragraph 129 are untrue, deceptive, or misleading in violation of Wis. Stat. § 100.18(1).

## Count XI

## Misrepresentation of Landline Phone Service

## (By Plaintiff State of Wisconsin Against All Defendants)[3]

132.   Plaintiff Wisconsin Attorney General adopts, incorporates by reference, and realleges Paragraphs 31–80 as if fully set forth herein.

133.   In addition to providing DSL Internet service, Frontier provides landline phone service to Wisconsin consumers.

134.   Wisconsin consumers who subscribe to Frontier's landline phone service tend to live in rural communities and many are elderly residents.

---

[3] Paragraphs 133–142 are alleged by Plaintiff State of Wisconsin only.

135.   Many Wisconsin consumers who live in rural communities rely upon landline phone service as cellphone service is often non-existent.

136.   Landline phone service is essential to the health and wellbeing of Wisconsin residents, but especially for the elderly population, to access medical care.

137.   Frontier has advertised, marketed, offered, and sold landline phone service on their website, through direct mail, and by phone.

138.   Frontier's advertisements represent to consumers that they can receive uninterrupted "crystal-clear" phone service with "99.9% reliability."  For example, on a Frontier webpage targeted to Wisconsin consumers, Frontier made the following representations, "Crystal-clear calling? We've got you covered. 24/7." That same webpage also represented to consumers that Frontier's "reliable copper powered network stays on even when the power goes out. Maintain full 911 reachability to keep your family safe."

139.   Despite representing to consumers that Frontier's landline phone service would be "crystal-clear," Wisconsin consumers routinely suffer from sound quality issues with their service.  For example, consumers have complained that they experience a buzzing or static sound that makes hearing the other caller very difficult, if not impossible.

140.   Disruptions to sound quality are concerning for the elderly population as they require clear phone lines to speak with loved ones, especially during the pandemic, and to access medical care.

141.   Further, despite representing that landline service subscribers would be "covered. 24/7," Frontier's landline subscribers routinely suffer from service outages.  For example, between 2018 and 2019 there were over 200,000 landline outages in Wisconsin.  Over 25,000 of those affected consumers suffered from outages lasting more than 24 hours.

142.   Disruptions to landline phone service are not only an annoyance for Wisconsin consumers, but they can also be life threatening as many consumers, especially the elderly, rely on their phone service for their medical care.

143.   In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of landline phone service, Frontier has represented directly or indirectly, expressly or by implication, that Frontier would provide to consumers a "crystal-clear" phone service that is consistently available.

144.   In truth and in fact, in numerous instances, Frontier did not provide the clear or consistent phone service that Frontier represented to consumers.

145.   Therefore, the representations as set forth in Paragraph 143 are untrue, deceptive, or misleading and constitute violations of Wis. Stat. § 100.18(1).

### WISCONSIN'S TELECOMMUNICATIONS LAW

146.   Wisconsin Stat. § 100.207(2) prohibits anyone associated with the provision of telecommunication service, including the rates, terms or conditions for the service, from making a statement or representation that is "false, misleading or deceptive, or which omits to state material information with respect to the provision of telecommunications service that is necessary to make the statement not false, misleading or deceptive."

147.   A "telecommunications service" is defined as "the offering for sale of the conveyance of voice communication…."  Wis. Stat. § 196.01(9m).

148.   By providing landline phone service, Frontier provides a telecommunication service.

### Count XII

### Misrepresentation of Telecommunication Service
### (By Plaintiff State of Wisconsin Against All Defendants)

149.   Plaintiff Wisconsin Attorney General adopts, incorporates by reference, and realleges Paragraphs 133–142 as if fully set forth herein.

150.   In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of landline phone service described in Paragraphs 133–142, Frontier has represented, directly or indirectly, expressly or by implication, that Frontier would provide to consumers landline phone service that is "crystal-clear" and consistently available.

151.   In truth and in fact, in numerous instances, Frontier did not provide the clear or consistent phone service that Frontier represented to consumers.

152.   Therefore, the representations as set forth in Paragraph 150 are false, misleading or deceptive and constitute violations of Wis. Stat. § 100.207(2).

## WISCONSIN'S UNFAIR BILLING LAW

153.   Wisconsin Stat. § 100.195(2)(c) prohibits a seller from billing a consumer for "services that the seller initiates under an agreement that is no longer in effect when the seller initiates the delivery."

154.   A "seller" is defined as a "seller or lessor of consumer goods or services, and includes any employee, agent, or representative acting on behalf of the seller." Wis. Stat. § 100.195(1)(f).

155.   "Telecommunications services" is exempt from this statute. Wis. Stat. § 100.195(1)(c)2.

156.   While Frontier's landline phone service is exempt from liability for Wis. Stat. § 100.195, Frontier's DSL Internet service is not.

### Count XIII

### Unfair Billing Practices

### (By Plaintiff State of Wisconsin Against All Defendants)

157.   Plaintiff Wisconsin Attorney General adopts, incorporates by reference, and realleges Paragraphs 31–80 as if fully set forth herein.

158.   In numerous instances, in connection with the sale and providing of DSL Internet service described in Paragraphs 31–80, Frontier has subscribed consumers to, and billed, charged, collected or attempted to collect charges from

consumers for a level of Internet service different from the service Frontier actually provided or was capable of providing at the time of delivery.

159. Therefore, Frontier's acts or practices as set forth in Paragraph 158 constitute unfair billing in violation of Wis. Stat. § 100.195(2)(c).

## WISCONSIN'S UNFAIR TRADE PRACTICES LAW

160. Wisconsin Stat. § 100.20(1) requires that "Methods of competition in business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices in business are hereby prohibited."

161. Pursuant to Wis. Stat. § 100.20(2)(a), the Wisconsin Department of Agriculture, Trade and Consumer Protection "may issue general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair." Those orders are codified in the administrative code.

162. Wisconsin Admin. Code ch. ATCP 123 codifies the general orders that apply to providers of "electronic communications services." "Electronic communications services" is defined as "a service, such as telecommunications service…and internet access service…." Wis. Admin. Code § ATCP 123.01(5)

163. Frontier provides telecommunications service through their landline phone service and internet access through their DSL Internet and fiber Internet. Frontier, therefore, meets the definition of an electronic communications services provider.

164. Wisconsin Admin. Code § ATCP 123.10(4) prohibits an electronic communications services provider from "misrepresent[ing] the terms of a subscription."

165. Wisconsin Admin Code § ATCP 123.10(8) prohibits an electronic communications services provider from "bill[ing] a consumer for electronic communications service in violation of [ch. ATCP 123]."

-32-

**Count XIV**

**Misrepresentation of Subscription Terms for DSL Internet Service**

**(By Plaintiff State of Wisconsin Against All Defendants)**

166.   Plaintiff Wisconsin Attorney General adopts, incorporates by reference, and realleges Paragraphs 31–80 as if fully set forth herein.

167.   In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of DSL Internet service subscriptions described in paragraphs 31–80, Frontier has represented, directly or indirectly, expressly or by implication, that Frontier would provide to consumers certain Internet service speeds, including download speeds.

168.   In truth and in fact, in numerous instances in which Frontier has made the representations set forth in Paragraph 167, Frontier did not provide, or could not provide, Internet service at the speeds that Frontier represented to consumers.

169.   Therefore, Frontier misrepresented the subscription terms for DSL Internet service as set forth in Paragraph 167, and each misrepresentation is a violation of Wis. Admin. Code § 123.10(4).

**Count XV**

**Misrepresentation of Subscription Terms for Landline Phone Service**

**(By Plaintiff State of Wisconsin Against All Defendants)**

170.   Plaintiff Wisconsin Attorney General adopts, incorporates by reference, and realleges Paragraphs 133–142 as if fully set forth herein.

171.   In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of landline phone service subscriptions described in paragraphs 133–142, Frontier has represented, directly or indirectly, expressly or by implication, that Frontier would provide to consumers consistent landline phone service that was "crystal-clear."

172.   In truth and in fact, in numerous instances in which Frontier has made the representations set for in Paragraph 171, Frontier did not provide, or could not provide, landline phone service that was either consistent or "crystal-clear."

173.   Therefore, Frontier misrepresented the subscription terms for telephone phone service as set for in Paragraph 171, and each misrepresentation is a violation of Wis. Admin. Code § ATCP 123.10(4).

**Count XVI**

**Improper Billing Practices**

**(By Plaintiff State of Wisconsin Against All Defendants)**

174.   Plaintiff Wisconsin Attorney General adopts, incorporates by reference, and realleges Paragraphs 31–80 and 133–142 as if fully set forth herein.

175.   Wisconsin Admin. Code ch. ATCP 123 contains various requirements of electronic communications services providers, which include, but are not limited to a  requirement that providers disclose "the material terms of a proposed subscription at or before the time that the consumer subscribes," which include, among other terms, "a clear identification of each service offering included in the subscription, including the material consumer features, functions, or capabilities which comprise that service offering."

176.   In numerous instances, in connection with the sale and providing of DSL Internet service described in Paragraphs 31–80, and in connection with the sale and providing of landline phone service described in Paragraphs 133–142, Frontier billed consumers despite not disclosing "a clear identification of each service offering included in the subscription" when they failed to disclose the actual DSL Internet speeds available to the consumers or the actual quality or consistency of the landline phone service.

177.   Therefore, each time Frontier billed a consumer after not providing a clear identification of the service offered in the subscription, Frontier violated Wis. Admin. Code § ATCP 123.10(8).

**CONSUMER INJURY**

178.    Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Frontier's violations of the FTC Act, the Arizona Consumer Fraud Act, California Business and Professions Code § 17500 *et seq.*, California Business and Professions Code § 17200 *et seq.*, the Indiana Deceptive Consumer Sales Act, the Michigan Consumer Protection Act, the North Carolina Unfair or Deceptive Trade Practices Act, the Wisconsin Deceptive Trade Practices Act, the Wisconsin Telecommunications Law, the Wisconsin Unfair Billing Law, and the Wisconsin Unfair Trade Practices law.  Absent injunctive relief by this Court, Frontier is likely to continue to injure consumers and harm the public interest.

**THIS COURT'S POWER TO GRANT RELIEF**

179.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive relief as the Court may deem appropriate to halt violations of any provision of law enforced by the FTC.

180.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to allow the Plaintiff States to enforce their state law claims against Frontier in this Court and to grant such relief as provided under state law.

181.    Pursuant to Ariz. Rev. Stat. Ann. §§ 44-1528, 44-1531, and 44-1534, this Court is authorized to grant relief including injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, the disgorgement of ill-gotten monies, removal of officers and directors, civil penalties, attorneys' fees, expenses, costs, and such other relief to which Plaintiff State of Arizona may be entitled.

182.    Pursuant to California Business and Professions Code §§ 17203, 17206, 17206.1, 17535, and 17536, this Court is authorized to enjoin any person who engages, has engaged, or proposes to engage in unfair competition, and to grant civil penalties, and other relief as may be necessary to restore to any person

in interest any money or property which may have been acquired by means of unfair competition.

183.   Pursuant to Ind. Code § 24-5-0.5-4, *et seq.*, this Court is authorized to grant relief including injunctive relief, consumer restitution civil penalties, costs, and all other just and proper relief to which Plaintiff Indiana may be entitled for violations of Ind. Code § 24-5-0.5, *et seq.*

184.   Pursuant to Mich. Comp. Laws §§ 445.905 and 445.910, this Court is authorized to grant relief including injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, the disgorgement of ill-gotten monies, removal of officers and directors, civil penalties, attorneys' fees, expenses, costs, and such other relief to which Plaintiff State of Michigan may be entitled.

185.   Pursuant to N.C.G.S. §§ 75-14 through 75-16.1, this Court is authorized to grant relief including injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, the disgorgement of ill-gotten monies, removal of officers and directors, civil penalties, attorneys' fees, expenses, costs, and such other relief to which Plaintiff State of North Carolina may be entitled.

186.   Pursuant to Wis. Stats. §§ 100.18(11)(d), 100.195(5m)(c), 100.20(6), 100.207(6)(b), 100.207(6)(c), 100.26, 100.261, 100.263, and 100.264, this Court is authorized to grant relief including injunctive relief, restitution, the refund of monies paid, civil forfeitures, consumer protection surcharges, supplemental forfeitures, attorneys' fees, expenses, costs, and such other relief to which Plaintiff State of Wisconsin may be entitled.

**PRAYER FOR RELIEF BY THE FEDERAL TRADE COMMISSION**

**WHEREFORE**, Plaintiff FTC requests that this Court:

A.   Enter a permanent injunction to prevent future violations of the FTC Act by Frontier;

B.   Grant preliminary relief and ancillary relief; and

-36-

C.      Award any other and additional relief as the Court determines to be just and proper.

**<u>PRAYER FOR RELIEF BY THE STATE OF ARIZONA</u>**

**WHEREFORE**, Plaintiff State of Arizona respectfully requests that the Court:

A.      Pursuant to A.R.S. § 44-1528(A)(1), issue a permanent injunction in accordance with Ariz. R. Civ. P. 65(d)(1), enjoining and restraining (a) Frontier, (b) its officers, agents, servants, employees, attorneys, and (c) all persons in active concert or participation with anyone described in part (a) or (b) of this paragraph, directly or indirectly, from engaging in deceptive, misleading, or unfair acts or practices, or concealments, suppressions, or omissions, that violate the Arizona CFA, A.R.S. § 44-1522(A), including specific injunctive relief barring Frontier from engaging in the unlawful acts and practices set forth above;

B.      Pursuant to A.R.S. § 44-1528(A)(2), order Frontier to restore to all persons in interest any monies or property, real or personal, which may have been acquired by any means or any practice in this article declared to be unlawful;

C.      Pursuant to A.R.S. § 44-1528(A)(3), order Frontier to disgorge all profits, gains, gross receipts, or other benefits obtained as a result of its unlawful acts alleged herein;

D.      Pursuant to A.R.S. § 44-1531, order Frontier to pay to the State of Arizona a civil penalty of up to $10,000 for each willful violation of A.R.S. § 44-1522;

E.      Pursuant to A.R.S. § 44-1534, order Frontier to reimburse the State of Arizona for its costs and attorneys' fees incurred in the investigation and prosecution of Frontier's activities alleged in this Complaint;

F.      Pursuant to A.R.S. § 44-1201, require Frontier to pay pre-judgment and post-judgment interest to the State of Arizona and all of its consumers;

G.     Award the State of Arizona such further relief the Court deems just and proper under the circumstances.

## PRAYER FOR RELIEF BY THE PEOPLE OF THE STATE OF CALIFORNIA

**WHEREFORE**, Plaintiff the People of the State of California respectfully request that this Court enter an order:

A.     Issuing an injunction prohibiting Frontier, its agents, employees, and all other persons and entities, corporate or otherwise, in active concert or participation with any of them, from engaging in unlawful, unfair, deceptive or misleading conduct;

B.     Assessing a civil penalty against Frontier for each violation of California Business and Professions Code § 17500 and California Business and Professions Code § 17200;

C.     Ordering Frontier to pay Plaintiff the People of the State of California's costs of suit, including but not limited to all costs of prosecution and investigation;

D.     Ordering Frontier to pay restitution as required by law;

E.     Granting such other and further relief as the Court deems equitable and proper.

## PRAYER FOR RELIEF BY THE STATE OF INDIANA

**WHEREFORE**, Plaintiff State of Indiana requests that this Court:

A.     Award Plaintiff State of Indiana such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including a preliminary injunction;

B.     Enter a permanent injunction to prevent future violations of the Indiana Deceptive Consumer Sales Act by Frontier;

C.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Frontier's violations of the Indiana Deceptive Consumer Sales Act including consumer restitution;

D.     Award Plaintiff State of Indiana civil penalties for each violation of the Indiana Deceptive Consumer Sales Act; and

E.     Award Plaintiff State of Indiana the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

## PRAYER FOR RELIEF BY THE PEOPLE OF THE STATE OF MICHIGAN

**WHEREFORE**, Plaintiff State of Michigan, pursuant to Mich. Comp. Laws §§ 445.905 and 445.910, and the Court's own equitable powers, requests that the Court:

A.     Award Plaintiff State of Michigan such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including a preliminary injunction;

B.     Enter a permanent injunction to prevent future violations of the Michigan Consumer Protection Act by Frontier;

C.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Frontier's violations of the Michigan Consumer Protection Act, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

D.     Award Plaintiff State of Michigan the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper; and

E.     Award Plaintiff State of Michigan civil penalties for each violation, attorneys' fees, and expenses as provided under state law.

## **PRAYER FOR RELIEF BY THE STATE OF NORTH CAROLINA**

**WHEREFORE**, Plaintiff State of North Carolina, pursuant to N.C.G.S. §§ 75-14 through 75-16.1, respectfully requests that this Court:

A.     Award Plaintiff State of North Carolina such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including a preliminary injunction, pursuant to N.C.G.S. § 75-14;

B.     Enter a permanent injunction to prevent future violations by Frontier of North Carolina's Unfair or Deceptive Trade Practices Act, pursuant to N.C.G.S. § 75-14;

C.     Award Plaintiff State of North Carolina such relief as the Court finds necessary to redress injury to consumers resulting from Frontier's violations of North Carolina's Unfair or Deceptive Trade Practices Act, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, pursuant to N.C.G.S. § 75-15;

D.     Impose civil penalties of up to $5,000.00 for each of Frontier's acts or practices that were knowingly violative of North Carolina's Unfair or Deceptive Trade Practices Act, pursuant to N.C.G.S. § 75-15.2;

E.     Award Plaintiff State of North Carolina reasonable attorneys' fees and costs incurred by the investigation and litigation of this matter, pursuant to N.C.G.S. § 75-16.1; and

F.     Award Plaintiff State of North Carolina any such other and additional relief as the Court may determine to be just and proper.

## **PRAYER FOR RELIEF BY THE STATE OF WISCONSIN**

**Wherefore,** Plaintiff State of Wisconsin, by its Attorney General, Joshua L. Kaul, respectfully asks this Court to award, pursuant to Wisconsin law, and this Court's own equitable powers, the following relief:

A.    Enter judgment in favor of the State of Wisconsin and against Frontier for Counts X–XVI alleged in this Complaint;

B.    Enter a permanent injunction to prevent future violations of Wisconsin law by Frontier;

C.    Award restitution to Wisconsin consumers who suffered a pecuniary loss due to Frontier's violations of Wisconsin law pursuant to Wis. Stats. §§ 100.18(11)(d), 100.195(5m)(c), 100.20(6), and 100.207(6)(b);

D.    Assess civil forfeitures against Frontier in the amount of not less than $50 nor more than $200 for each violation of Wis. Stat. § 100.18(1) pursuant to Wis. Stat. § 100.26(4), not less than $100 nor more than $10,000 for each violation of Wis. Stat. § 100.195(2)(c) pursuant to Wis. Stat. § 100.195(5m)(d), not less than $100 nor more than $10,000 for each violation of Wis. Admin. Code § ATCP 123.10 pursuant to Wis. Stat. § 100.26(6), and not less than $25 nor more than $5,000 for each violation of Wis. Stat. § 100.207 pursuant to Wis. Stat. § 100.207(6)(c);

E.    Assess additional amounts against Frontier for consumer protection surcharges pursuant to Wis. Stat. § 100.261, supplemental forfeitures for violations against elderly or disabled persons pursuant to Wis. Stat. § 100.264, plus all applicable assessments and costs;

F.    Award the State of Wisconsin the reasonable costs of investigation and prosecution of this action, including attorneys' fees, pursuant to Wis. Stat. § 100.263;

G.     Award the Wisconsin Department of Agriculture, Trade and Consumer Protection for the reasonable costs it has incurred in preparing this action, pursuant to Wis. Stats. §§ 93.20(2) and 814.04; and

H.     Provide such other and further equitable relief as justice and equity may require.

Respectfully submitted,

1   **FOR PLAINTIFF FEDERAL TRADE COMMISSION:**

2

3                                          JAMES REILLY DOLAN
                                           Acting General Counsel
4

5   **Dated:** _____May 19___, 2021
                                           _____
6                                          ROBERT J. QUIGLEY
                                           rquigley@ftc.gov
7                                          BARBARA CHUN
                                           bchun@ftc.gov
8                                          MILES D. FREEMAN
                                           mfreeman@ftc.gov
9

10

11                                         FEDERAL TRADE COMMISSION
                                           10990 Wilshire Blvd., Suite 400
12                                         Los Angeles, CA 90024
                                           (310) 824-4300 (phone)
13                                         (310) 824-4380 (fax)

14

15                                         *Attorneys for the Federal Trade*
                                           *Commission*
16

17

18

19

20

21

22

23

24

25

26

27

28

1  **FOR PLAINTIFF STATE OF ARIZONA:**

2

3                                          MARK BRNOVICH
                                           Attorney General of the State of Arizona

4

5  **Dated:** May 17          **, 2021**

6                                          DYLAN JONES, *pro hac vice pending*

7                                          Assistant Attorney General
                                           Dylan.Jones@azag.gov

8

9                                          Office of the Attorney General

10                                         Civil Litigation Division
                                           2005 N. Central Ave.

11                                         Phoenix, AZ 85004
                                           Tel: (602) 542-5210

12                                         Fax: (602) 542-4377

13                                         *Attorneys for the State of Arizona*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOR PLAINTIFF PEOPLE OF THE STATE OF CALIFORNIA:**

GEORGE GASCÓN
District Attorney of Los Angeles
County

**Dated:** \_\_\_\_\_ May 14 \_\_\_\_\_, **2021**

*Steven Wang*

HOON CHUN, Cal. Bar. No 132516
Head Deputy District Attorney
hchun@da.lacounty.gov
STEVEN WANG, Cal Bar No. 221950
Deputy District Attorney
swang@da.lacounty.gov

OFFICE OF LOS ANGELES
COUNTY DISTRICT ATTORNEY
GEORGE GASCÓN
211 West Temple St. Suite 1000
Los Angeles, CA 90012
(213) 257-2450 (phone)
(213) 633-0996 (fax)

*Attorneys for the People of the State of
California*

**FOR PLAINTIFF PEOPLE OF THE STATE OF CALIFORNIA (cont'd):**

MICHAEL A. HESTRIN
District Attorney of Riverside County

Dated: ___May 13___, 2021

EVAN H. GOLDSMITH, Cal. Bar No.
297356
Deputy District Attorney
EvanGoldsmith@RivCoDA.org

OFFICE OF RIVERSIDE COUNTY
DISTRICT ATTORNEY MICHAEL A.
HESTRIN
3960 Orange St.
Riverside, CA 92501
(951) 955-5400 (phone)
(951) 955-5682 (fax)

*Attorneys for the People of the State of
California*

-46-

**FOR PLAINTIFF STATE OF INDIANA:**

TODD ROKITA
Indiana Attorney General

Dated: _____May 14___, 2021                    _____

CHRISTA K. KUMMING, *pro hac vice*
*pending*
Deputy Attorney General
Attorney #36276-49
Christa.Kumming@atg.in.gov

Consumer Litigation
Office of Attorney General Todd Rokita
302 West Washington Street, IGCS 5th
Floor
Indianapolis, IN 46204
(317) 234-4662 (phone)
(317) 232-7979 (fax)

*Attorneys for the State of Indiana*

**FOR PLAINTIFF PEOPLE OF THE STATE OF MICHIGAN:**

DANA NESSEL
Michigan Attorney General

**Dated: May 17, 2021**

_[signature]_

_____
AARON W. LEVIN, *pro hac vice
pending*
Assistant Attorney General
levina@michigan.gov

Corporate Oversight Division
Michigan Department of Attorney
General
525 W. Ottawa St.
PO Box 30736
Lansing, MI 48909
(517) 335-7632 (phone)
(517) 335-6755 (fax)
*Attorneys for the People of the State of
Michigan*

-48-

1

**FOR PLAINTIFF STATE OF NORTH CAROLINA:**

2

3                                       JOSHUA H. STEIN
                                        North Carolina Attorney General
4
      Dated: 17 May    , 2021
5

6                                       TRACY NAYER, *pro hac vice pending*
7                                       North Carolina State Bar No. 36964
                                        Assistant Attorney General
8                                       tnayer@ncdoj.gov

9
                                        NORTH CAROLINA DEPARTMENT
10                                      OF JUSTICE
11                                      Post Office Box 629
                                        Raleigh, NC 27602
12                                      (919) 716-6000 (phone)
13                                      (919) 716-6050 (fax)

14
                                        *Attorneys for the State of North*
15                                      *Carolina*

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOR PLAINTIFF STATE OF WISCONSIN:**

JOSHUA L. KAUL
Wisconsin Attorney General


Dated: __May 17__, 2021

LAURA E. MCFARLANE, *pro hac vice pending*
Wisconsin State Bar # 1089358
Assistant Attorney General
mcfarlanele@doj.state.wi.us

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-8911 (phone)
(608) 266-2250 (Fax)

*Attorneys for the State of Wisconsin*