MAYER BROWN LLP
Dale J. Giali (SBN 150382)
dgiali@mayerbrown.com
Keri E. Borders (SBN 194015)
kborders@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, California  90071-1503
Telephone:  (213) 229-9500
Facsimile:   (213) 625-0248

Attorneys for Defendants
Frontier Communications Corporation, Frontier Communications Parent, Inc., Frontier Communications Intermediate, LLC, and Frontier Communications Holdings, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>FRONTIER COMMUNICATIONS CORPORATION, et al.,<br><br>Defendants. | Case No. 2:21-cv-4155-RGK-MAA<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**<br><br>[*Declarations of Dale J. Giali and Scott Mispagel filed concurrently herewith*]<br><br>Date: September 13, 2021<br>Time: 9 a.m.<br>Courtroom: 850 (Roybal)<br><br>Honorable R. Gary Klausner<br><br>Complaint Filed: 5/19/21 |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ...................................................................................................... 1

II. ARGUMENT ............................................................................................................. 2

    A. The Claims Of The Non-California State Plaintiffs Should Be Dismissed .......................................................................................................... 2

        1. Pendant Personal Jurisdiction Over Nonresident Plaintiffs With No Link To The Forum Is A Dead Doctrine .......................... 2

        2. The Discretionary Exercise Of Pendant Personal Jurisdiction Is Not Appropriate Here .................................................. 4

    B. All Plaintiffs Sued The Wrong Defendants ................................................... 6

    C. Plaintiffs Have Not Alleged A Plausible Claim Of False Or Misleading Advertising Under Controlling Ninth Circuit Law ............... 8

III. CONCLUSION ...................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
   368 F. 3d 1174 (9th Cir. 2004) ................................................................. 4, 5

*Applied Underwriters, Inc. v. Combined Mgmt., Inc.*,
   371 F. App'x 834 (9th Cir. 2010) ................................................................. 7

*Blue Spike, LLC v. Frontier Communications Corp.*,
   No. 6:18-cv-242 (E.D. Tex.) ........................................................................ 7

*Bristol-Myers Squibb Co. v. Superior Court*,
   137 S. Ct. 1773 (2017) ........................................................................ 2, 3, 4

*Carter v. Ford Motor Co.*,
   2021 WL 1165248 (S.D. Fla. Mar. 26, 2021) .......................................... 4, 5

*Chavez v. Church & Dwight Co.*,
   2018 WL 2238191 (N.D. Ill. May 16, 2018) ............................................... 3

*Cottle v. Plaid, Inc.*,
   2021 WL 1721177 (N.D. Cal. Apr. 30, 2021) ............................................. 9

*FTC v. Am. Future Sys., Inc.*,
   2021 WL 199612 (E.D. Pa. Jan. 20, 2021) .................................................. 6

*FTC v. Amazon.com, Inc.*,
   71 F. Supp. 3d 1158 (W.D. Wash. 2014) .................................................... 9

*FTC v. Educare Ctr. Servs., Inc.*,
   414 F. Supp. 3d 960 (W.D. Tex. 2019) ....................................................... 6

*FTC v. Next-Gen, Inc.*,
   2018 WL 5310414 (W.D. Mo. Sept. 10, 2018) ........................................... 6

*FTC v. Quincy Bioscience Holding Co., Inc.*,
   389 F. Supp. 3d 211 (S.D.N.Y. 2019) ..................................................... 5, 6

*Gaines v. Gen. Motors, LLC*,
   2018 WL 3752336 (S.D. Cal. Aug. 7, 2018) ............................................... 3

*Gill v. Three Dimension Sys., Inc.*,
    87 F. Supp. 2d 1278 (M.D. Fla. 2000) .................................................................. 6

*Greene v. Mizuho Bank*,
    289 F. Supp. 3d 870 (N.D. Ill. 2017) .................................................................... 3

*Horowitz v. AT&T, Inc.*,
    2018 WL 1942525 (D. N.J. Apr. 25, 2018) .......................................................... 3

*Johnson v. Or. Dep't of Human Res.*,
    141 F.3d 1361 (9th Cir. 1998) .............................................................................. 7

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ................................................................................ 8

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ............................................................................ 10

*Ladore v. Sony Comput. Ent. Am., LLC*,
    75 F. Supp. 3d 1065 (N.D. Cal. 2014) .................................................................. 8

*Maloney v. Verizon Internet Servs.*,
    2009 WL 8129871 (C.D. Cal. Oct. 4, 2009) ......................................................... 8

*Maloney v. Verizon Internet Servs.*,
    413 F. App'x 997 (9th Cir. 2011) ............................................................... 1, 8, 10

*McKee v. Audible, Inc.*,
    2018 WL 11263238 (C.D. Cal. Mar. 12, 2018) ................................................... 5

*Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*,
    2019 WL 4888693 (N.D. Cal. Oct. 3, 2019) ........................................................ 5

*New York v. Charter Communications, Inc.*,
    2018 WL 919991 (N.Y. Sup. Ct. Feb. 16, 2018) ................................................ 10

*Perry v. Brown*,
    791 F. App'x 643 (9th Cir. 2019) ......................................................................... 3

*Prime Healthcare Centinela, LLC v. Kimberly-Clark Corp.*,
    2016 WL 7177532 (C.D. Cal. May 26, 2016) .................................................. 4, 5

*Schutza v. Cuddeback*,
    262 F. Supp. 3d 1025 (S.D. Cal. 2017) ................................................................. 6

*Story v. Heartland Payment Sys., LLC*,
    461 F. Supp. 3d 1216 (M.D. Fla. 2020) .................................................................. 4

*Vallarta v. United Airlines, Inc.*,
    497 F. Supp. 3d 790 (N.D. Cal. 2020) .................................................................... 3

*Walter v. Hughes Communications, Inc.*,
    682 F. Supp. 2d 1031 (N.D. Cal. 2010) ................................................................ 10

**Statutes**

28 U.S.C. § 1367 .................................................................................................................. 6

**Treatises**

S. Dodson, *Personal Jurisdiction in Comparative Context*, 68 Am. J.
    Comp. L. 701, 709 & 717 (2021) ........................................................................... 3

## I. INTRODUCTION

FTC does not deny Frontier's observation that FTC pieced together an unnatural cluster of a case comprised of disparate states and state claims in an effort to get around the Supreme Court's unanimous *AMG* decision. But the Court need not and ought not reward FTC's jurisdictional gamesmanship. The whole reason FTC recruited six state strawmen, of course, was so that a claim for *past damages* under those states' unique laws could be asserted since, after *AMG*, FTC cannot seek a monetary remedy for itself, only *future injunctive* relief. The problem is, this Court lacks jurisdiction over the claims of the non-California plaintiffs, and the discretionary exercise of "pendant personal jurisdiction" would be contrary to Supreme Court precedent. In any event, the entire case should be dismissed because all plaintiffs sued the wrong defendants.

Lack of jurisdiction and wrong defendants aside, plaintiffs' attempted rehabilitation of the false advertising claims hinges on the illogical contention that "*as fast as* x speed" means "*guaranteed* x speed." In affirming a motion to dismiss out of this District, however, the Ninth Circuit squarely decided this issue in *Maloney,* holding that substantively identical language—"up to x speed"—means "up to x speed," not a guaranteed speed. *Maloney* is the beginning and the end of the advertising claims.

Plaintiffs also continue to misrepresent the advertising at issue. Without explaining or disputing the fact that they reduced the challenged advertisement's size by 80% in their complaint (Mot. 8-9; Compl. ¶ 48), plaintiffs continue to tout their incredible shrinking advertisement to argue that defendants' explanatory language is "tiny" and "inconspicuous." Opp. 15:1-4. Not true. They now also contend that the explanatory language is "separated from the advertisement's main message." *Id*. It's not. They further argue that the reduced-in-size mailer "do[es] not . . . include" the explanatory phrase "as fast as." Opp. 18:1-4. It does.

All of this, as well as the express incorporation of the terms and conditions,

1

can be seen in the below graphic, which depicts the advertising—as shrunken by 80% in the complaint—with call-outs of the relevant language that plaintiffs have purposefully rendered illegible and strangely deny even exists.



See Compl. ¶ 48 (at p. 13); Giali Supp. Decl., Ex. 1. The actual advertisements thus conclusively contradict plaintiffs' allegations. Perhaps that's why plaintiffs distorted them and object to their inclusion in the record on this motion (see n.3, infra).

For these reasons, and as set forth in the moving papers, the motion to dismiss should be granted without leave to amend.

## II. ARGUMENT

### A. The Claims Of The Non-California State Plaintiffs Should Be Dismissed.

Plaintiffs concede there is no traditional basis for the exercise of general or specific personal jurisdiction over the claims of the non-California state plaintiffs. Instead, plaintiffs argue that the doctrine of "pendent personal jurisdiction" allows the Court to hear them, and that the Court should exercise its discretion to do so. Plaintiffs are incorrect on both scores: the doctrine no longer exists in these circumstances, and the Court should decline to hear the non-California plaintiffs' claims in any event.

#### 1. Pendant Personal Jurisdiction Over Nonresident Plaintiffs With No Link To The Forum Is A Dead Doctrine.

The pendant personal jurisdiction theory upon which plaintiffs rely is entirely incompatible with *Bristol-Myers Squibb Co. v. Superior Court* ("*BMS*"), 137 S. Ct. 1773, 1781 (2017),. As a leading commentator notes, after *BMS*, "[p]endent

jurisdiction regarding multiple parties seems all but dead." S. Dodson, *Personal Jurisdiction in Comparative Context*, 68 Am. J. Comp. L. 701, 709 & 717 (2021). Plaintiffs' invitation to resurrect this dead doctrine should be declined.

Because discretionary pendent personal jurisdiction is irreconcilable with *BMS*, district courts understandably reject pendent personal jurisdiction over non-forum claims in less extreme circumstances than those presented here. In *Greene v. Mizuho Bank*, the court held that courts may no longer exercise pendent personal jurisdiction over claims "that lack a sufficient nexus to the forum state *just because those claims are closely related to another plaintiff's* claims that do have that nexus." 289 F. Supp. 3d 870, 873-77 (N.D. Ill. 2017) (emphasis added); *Gaines v. Gen. Motors, LLC*, 2018 WL 3752336, at *2-3 (S.D. Cal. Aug. 7, 2018) (exercising jurisdiction over nonresident plaintiffs' claims "arising entirely from out-of-state activities . . . would render *[BMS]* meaningless"); *Horowitz v. AT&T, Inc.*, 2018 WL 1942525, at *15 (D. N.J. Apr. 25, 2018) (no jurisdiction for nonresidents' claims "even if those claims are similar or identical to claims brought in the same case by a resident named plaintiff against the same defendant"); *Chavez v. Church & Dwight Co.*, 2018 WL 2238191, at *11 (N.D. Ill. May 16, 2018) (under *BMS*, no jurisdiction over "claims that have no connection with this state beyond their similarity to claims asserted by other [resident] plaintiffs"); *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 801-02 (N.D. Cal. 2020) (rejecting pendent personal jurisdiction).

The bottom line is, *BMS* forecloses the non-California plaintiffs' claims. Yet plaintiffs mention *BMS* only once and in passing (Opp. n.3), summarily declaring that pendent personal jurisdiction "remains in force" by citing to *dicta* from a footnote in *Perry v. Brown*, 791 F. App'x 643, 646 n.1 (9th Cir. 2019). But *Perry*—a single-plaintiff, single-defendant action by a California resident against a defendant with substantial contacts with California—did not involve a record remotely similar to the one here, and it did not even cite *BMS*. *Id.* For this reasons alone, the Court can and should dismiss the non-California plaintiffs' causes of action.

- 3 -

## 2. The Discretionary Exercise Of Pendant Personal Jurisdiction Is Not Appropriate Here.

Even prior to *BMS*, the "exercise of personal pendent jurisdiction in a particular case [was] within the discretion of the district court." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F. 3d 1174, 1181 (9th Cir. 2004). In particular, district courts rightly rejected pendent personal jurisdiction "where [p]laintiffs seek to piggyback personal jurisdiction over one set of [p]laintiffs' claims (the non-California plaintiffs) onto claims by a different set of plaintiffs (the California plaintiffs)" and where "the former do not arise from or relate to [d]efendants' contacts in the forum state." *Prime Healthcare Centinela, LLC v. Kimberly-Clark Corp.*, 2016 WL 7177532, at *1-2 (C.D. Cal. May 26, 2016). In rejecting the pendent-party theory after *BMS*, one court explained that pendent jurisdiction may allow "burdening the defendant with *additional claims* by a *single plaintiff*," but it does not allow "burdening that same defendant with the innumerable claims of innumerable other plaintiffs with no connection to the forum." *Carter v. Ford Motor Co.*, 2021 WL 1165248, at *11 (S.D. Fla. Mar. 26, 2021) (emphasis added) (concluding jurisdiction did not exist over "similar claims against the same defendant brought by non-resident plaintiffs" just because court "already" had jurisdiction over defendant for residents' claims). It should come as no surprise that since *BMS*, "*no* federal circuit . . . has adopted this pendent-party variety of personal jurisdiction" that plaintiffs espouse. *Id.* at *9; *Story v. Heartland Payment Sys., LLC*, 461 F. Supp. 3d 1216, 1229 (M.D. Fla. 2020) (declining to "expand the doctrine to include additional pendent *party plaintiffs*, not just pendent *claims*") (emphasis in original).

The state claims here are especially ill-suited for this case because there would be no economy, efficiency, or fairness to joining them to the FTC's claims given incongruity between the applicable factual records and legal standards, as well as the remedies requested. FTC's federal suit on behalf of consumers nationwide is at once both far broader and substantially narrower than the states' claims, which are brought

on behalf of residents of six states and are based on local DSL infrastructure managed by local operating entities and local alleged injuries. In fact, plaintiffs allege that each state law has a different consumer deception standard (Opp. 11 & n.9) and the FTC seeks only injunctive relief over *prospective* conduct, while each state also seeks *retrospective* monetary remedies. If plaintiffs are correct, different factfinders (Frontier will be entitled to a jury on the state legal claims) would be tasked with the difficult task of determining a hodgepodge of alleged violations of different laws based on different conduct in different locations under different standards of liability with different experts. Imagine the jury instructions.

Under these circumstances, courts routinely decline to exercise pendant personal jurisdiction. *See, e.g.*, *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 2019 WL 4888693, at *23 (N.D. Cal. Oct. 3, 2019), order vacated in part on other grounds, 2021 WL 1226984 (S.D.N.Y. Mar. 31, 2021) (no pendent jurisdiction over claims by 18 companies in 15 states because "each of the Plaintiffs engaged in separate and distinct transactions with Defendants"); *Kimberly-Clark*, 2016 WL 7177532, at *2. The same is true for parties asserting local claims from far-flung venues. *See McKee v. Audible, Inc.*, 2018 WL 11263238, at *13 (C.D. Cal. Mar. 12, 2018) (adjudicating claims under two different state laws neither "promote[s] efficiency [n]or preserve[s] resources"); *Carter*, 2021 WL 1165248 at *15 ("Plaintiffs' pendent-party personal-jurisdiction arguments would require this Court to (needlessly) exercise jurisdiction over parties whose claims have *no* connection to Florida.").

None of the decisions plaintiffs cite supports pendant personal jurisdiction here. Those that even address it did not involve either a dispute over proper defendants or multiple nonresident plaintiffs trying to append stand-alone non-forum state claims relating to non-forum activities to the federal claim of *another* plaintiff. *See Action Embroidery,* 368 F.3d at 1177; *FTC v. Quincy Bioscience Holding Co., Inc.*, 389 F. Supp. 3d 211, 219 (S.D.N.Y. 2019). Others were not presented with a

personal jurisdiction challenge to state claims (*FTC v. Educare Ctr. Servs., Inc.*, 414 F. Supp. 3d 960 (W.D. Tex. 2019)) or did not address pendent personal jurisdiction at all (*FTC v. Am. Future Sys., Inc.*, 2021 WL 199612 (E.D. Pa. Jan. 20, 2021); *FTC v. Next-Gen, Inc.*, 2018 WL 5310414 (W.D. Mo. Sept. 10, 2018).

Accordingly, the Court would be well within its discretion to decline to expand jurisdiction to cover the non-California states' claims.[1]

### B. All Plaintiffs Sued The Wrong Defendants.

Even if plaintiffs were right about everything to this point, the fact of the matter is all of them sued the wrong defendants. While Frontier does not dispute the existence of nationwide service of process by FTC (but not any state) against a proper defendant, that doctrine is irrelevant to the analysis here. Plaintiffs sued *holding* companies over whom personal jurisdiction cannot be exercised in *any* district based on these allegations. As FTC acknowledges, even if nationwide service is statutorily authorized, "'due process demands a showing of minimum contacts with the United States,' meaning that 'the defendant has *acted* within any district of the United States . . . .'" Opp. 4 (citation omitted, emphasis added). Here, *none* of the named defendants engaged in *any* of the alleged practices in *any* district of the United States, much less this one. Mot., 3-4; Meyer Decl. ¶¶ 11-12. In all events, the state plaintiffs are not accorded national service of process authority merely by virtue of "related" state claims. *Cf.* Opp. 5-6, 11; *see, e.g., Gill v. Three Dimension Sys., Inc.*, 87 F. Supp. 2d

---

[1] FTC's pointed and public criticism of the unanimous Supreme Court's *AMG* decision (*e.g.*, Mot. 1 & n.1), followed by FTC's attempt to circumvent the Supreme Court's prohibition on FTC's pursuit of monetary relief in *AMG* by recruiting faraway states to do FTC's damages bidding, is also precisely the sort of "exceptional circumstance" under which this Court has "compelling reasons for declining" *subject matter* jurisdiction over the state claims under 28 U.S.C. § 1367(c)(4). *See Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017) (finding that the "[c]ourt's interest in discouraging forum-shopping" justified declining supplemental jurisdiction). Litigants, particularly government agencies, ought to accept and abide by judicial decisions, not engage in *ad hominem* attacks or try to end-run their rulings, as FTC has done here.

1278 (M.D. Fla. 2000) (nationwide service did not bestow pendent personal jurisdiction over defendants against whom plaintiff asserted only state-law claims, even if court had supplemental subject matter jurisdiction over state-law claims).

As a fallback, plaintiffs make much of statements "Frontier Communications Corporation" ("FCC") made in FTC's pre-litigation investigation. Opp. 7-10. Plaintiffs' argument is too clever by half, for it was FTC that insisted that FCC, when referring to itself, be defined as itself *and* all "its wholly or partially owned subsidiaries . . . and all . . . employees" of each. *See* FTC's Jamison Decl., Ex. 5 p. 12 (definition of "Company"); *see also* Opp. n.5. Thus, statements in the pre-litigation process "by FCC" are far from an acknowledgement that FCC itself performed any of the accused acts. To the contrary, the record confirms that "FCC" was being used as shorthand—at the FTC's insistence—to refer to the entire Frontier corporate family, including the operating entities that provide or market services. *See* Meyer Decl. ¶ 16; *compare also* concurrently filed Mispagel Decl. *with* his earlier declaration, attached to FTC's Opp. at Jamison Decl. Ex. 9. Plaintiffs' effort to exploit the corporate definition FTC forced upon FCC is both unfair and misplaced.

Plaintiffs also contend that in other litigation, involving entirely different claims, FCC supposedly made statements blurring corporate separateness. Opp. 10:1-3. FTC then asserts that such statements are conclusively binding here. Opp. n.7. Not so. Plaintiffs' "judicial estoppel" argument is contrary to law. *See, e.g., Johnson v. Or. Dep't of Human Res.*, 141 F.3d 1361, 1369 (9th Cir. 1998); *Applied Underwriters, Inc. v. Combined Mgmt., Inc.*, 371 F. App'x 834, 836 (9th Cir. 2010). Ultimately, the most plaintiffs can muster is that its investigation "suggests" that Frontier's corporate separateness is "not truly meaningful." Opp. n.5. That bare suggestion cannot overcome defendants' clear evidentiary showing. Meyer Decl. ¶¶ 8-14. Moreover, plaintiffs fail to acknowledge the fact that FCC took the same position in prior litigation as to its holding company status, which the court and plaintiff credited. *See, e.g., Blue Spike, LLC v. Frontier Communications Corp.*, No.

6:18-cv-242 (E.D. Tex.), ECF Nos. 8-1, 22. Defendants' position is not a construct of this case.

Finally, FTC acknowledges that FCC no longer exists. Compl. ¶¶ 23, 28. Under any scenario, therefore, FCC is not a proper defendant because FTC cannot go back in time to get a future injunction against a defunct entity. Compl. p. 36 ¶ A.

### C. Plaintiffs Have Not Alleged A Plausible Claim Of False Or Misleading Advertising Under Controlling Ninth Circuit Law.

"As fast as" or "up to" a particular internet speed refers to a maximum—not a guaranteed—speed. That's what the Ninth Circuit held in *Maloney v. Verizon Internet Servs.*, 413 F. App'x 997, 999-1000 (9th Cir. 2011), affirming an order granting a motion to dismiss. *Maloney* is game, set and match on plaintiffs' false advertising claims.

Contrary to plaintiffs' argument, *Maloney* holds that the explanations contained in the ads *and* in the incorporated terms and conditions "meaningfully disclos[e]" (Opp. 2:15) what a consumer is purchasing. *Maloney v. Verizon Internet Servs.*, 2009 WL 8129871, at *5 (C.D. Cal. Oct. 4, 2009). *Maloney* makes clear that a court can judicially notice and consider on a motion to dismiss "documents that a complaint is based upon" that are *not* "referenced in the complaint." *Id.* at *2. That means Frontier's terms and conditions are properly before the Court on this motion (ECF No. 45, Ex. B) because they describe the services being advertised upon which the complaint is based (Mot. 13-14; *supra* p. 2), which is not dependent on whether the consumer saw and read them. *Maloney*, 2009 WL 8129871, at *5. Indeed, in affirming the decision to dismiss the complaint, the Ninth Circuit did not even mention, let alone rely on, whether plaintiff had actually seen and read the terms and conditions. *Maloney*, 413 F. App'x 997.[2]

---

[2] None of the cases on which plaintiffs rely relate to false advertising claims in which the challenged ad contained express references to the applicable terms and conditions. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) (the terms and conditions were *not* part of challenged advertising); *Ladore v. Sony*

- 8 -

Plaintiffs attack defendants' motion as "stark[ly] misreading ... the complaint" and failing to "address the[] allegations." Opp. 1:14. Plaintiffs, however, readily acknowledge (Opp. at 1) that they are pursuing the precise theory that defendants' motion addresses: defendants' alleged "misrepresent[ation] [of] the speed of the Internet service that they sell to consumers." And, significantly, plaintiffs continue to manipulate the very advertisements they are challenging, as defendants detail and illustrate at p. 2, above. That same mailer has numerous other legible disclosures and explanations, including on the page plaintiffs excluded from the complaint, which make clear that no particular speed is promised and, therefore, no particular speed should be expected. Mot. 9:17-10:2; Giali Supp. Decl. ¶ 8 & Ex. 1.[3]

The digital advertisement pictured in the complaint likewise supports defendants' motion. Plaintiffs have finally provided the entire digital ad. Quigley Decl., Ex. 11. As plaintiffs concede (Opp. 14:24; *see also* Compl. ¶¶ 52-57), consumers cannot purchase internet services from that ad alone; rather they are directed to the website for additional information once the "shop now" button is clicked. At that point, as plaintiffs again concede (*id.*), a consumer is provided notice of and access to the applicable terms and conditions, which provide numerous additional disclosures about the DSL internet service being offered. *See* Mot. 10:17-

---

*Comput. Ent. Am., LLC*, 75 F. Supp. 3d 1065, 1074 (N.D. Cal. 2014) (breach of warranty claims); *FTC v. Amazon.com, Inc.*, 71 F. Supp. 3d 1158, 1162 (W.D. Wash. 2014) (claims relating to billing parents and other account holders for in-app purchases incurred by children); *Cottle v. Plaid, Inc.*, 2021 WL 1721177, at *8 (N.D. Cal. Apr. 30, 2021) (invasion of privacy and intrusion into private affairs claims).

[3] Plaintiffs' objection to defendants' inclusion of the full-sized mailer used to generate Figure B of the complaint is not well-taken. *First*, the mailer attached to the moving papers is identical in all material respects to Figure B. Giali Supp. Decl. ¶ 8. *Second*, plaintiffs don't dispute that the mailer is a true and correct copy of an actual challenged advertisement, regardless if it is the exact source of Figure B. Opp. 14:10-18. *Third*, with their reply papers, defendants submit a copy of the mailer from which plaintiffs generated Figure B. *See* Giali Supp. Decl. ¶¶ 3-7 & Ex. 1. As the Court can see, the mailers are materially identical. *Id.* ¶ 8.

11:24. And, of course, all of the challenged advertising is couched in terms of a speed tier with a ceiling, not a floor—with no promise of any particular speed.

Needless to say, and contrary to plaintiffs' insinuation (*see* Opp. 16:5-9, 17:9-10), plaintiffs don't get to omit references to the terms and conditions in their complaint and then use that purposeful omission of inconvenient facts to try to defeat a motion to dismiss. *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (whether plaintiff alleges judicially noticeable facts is not relevant to whether they may be considered on motion to dismiss); Def. RJN (ECF No. 45). The ads and the terms and conditions are inseparable—they are one and the same. Plaintiffs' *modus operandi* of ignoring authority and evidence they do not like cannot carry the day.

Faced with *Maloney,* plaintiffs resort to the inapplicable generic rule that their allegations raise factual issues not appropriate on motion to dismiss. Opp. 12. But that is the exact question *Maloney* addressed and resolved contrary to plaintiffs' position. Plaintiffs simply cannot escape *Maloney*'s grip.[4]

## III. CONCLUSION

The motion to dismiss the complaint should be granted in its entirety and the complaint dismissed with prejudice.

---

[4] Other decisions plaintiffs cite (*see* Opp. 18) are inapposite. For example, *Walter v. Hughes Communications, Inc.*, 682 F. Supp. 2d 1031 (N.D. Cal. 2010), which predates the Ninth Circuit's affirmance of *Maloney*, did not address the district court decision in *Maloney*, relying instead on a "general rule" against pleading attacks on deception claims. In *Maloney* the Ninth Circuit later decided the issue on a record materially identical to that presented here. *See, e.g.*, Mot. 15-17. Likewise, *New York v. Charter Communications, Inc.*, 2018 WL 919991 (N.Y. Sup. Ct. Feb. 16, 2018), is a state trial court order under New York law that does not address *Maloney*.

Dated: August 30, 2021

MAYER BROWN LLP
Dale J. Giali
Keri E. Borders
Robert S. Harrell
Kathryne M. Gray

By: /s/ *Dale J. Giali*
    Dale J. Giali
    Attorneys for Defendants