MAYER BROWN LLP
Dale J. Giali (SBN 150382)
*dgiali@mayerbrown.com*
Keri E. Borders (SBN 194015)
*kborders@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, California  90071-1503
Telephone:   (213) 229-9500
Facsimile:    (213) 625-0248

Attorneys for Defendants
Frontier Communications Corporation, Frontier
Communications Parent, Inc., Frontier
Communications Intermediate, LLC, and
Frontier Communications Holdings, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> FRONTIER COMMUNICATIONS CORPORATION, et al., <br><br> Defendants. | Case No. 2:21-cv-4155-RGK-MAA <br><br> **DEFENDANTS' AMENDED ANSWER TO PLAINTIFFS' COMPLAINT** <br><br><br> Honorable R. Gary Klausner <br><br> Complaint Filed: 5/19/21 |

1    Defendants Frontier Communications Corporation, Frontier Communications

2    Parent, Inc., Frontier Communications Intermediate, LLC, and Frontier

3    Communications Holdings, LLC (collectively, "Defendants"), through their

4    undersigned counsel, hereby submit their Answer and Additional Defenses to the

5    Complaint for Preliminary Injunction, Permanent Injunction, Monetary Relief and

6    Other Relief (the "Complaint") of Plaintiffs the Federal Trade Commission ("FTC")

7    and the People of the State of California, by and through the District Attorneys of

8    Los Angeles and Riverside Counties ("California") (together, "Plaintiffs"), and state

9    as follows:

10                          **Preliminary Statement**

11    Defendants do not admit that the headings or subheadings contained within

12    Plaintiffs' Complaint are accurate or appropriate for any purpose in this matter and,

13    to the extent that any heading or subheading can be read to contain factual

14    allegations, deny each and every one of them unless expressly indicated otherwise.

15    Similarly, unless expressly indicated otherwise, Defendants' use of any defined

16    term or phrase set forth in the Complaint is not an admission that such definition is

17    proper.[1] In addition, the Complaint contains three footnotes and two graphics. To

18    the extent the contents of the footnotes are not addressed in the text of the response

19    to the Complaint paragraph to which the footnote relates and/or to the extent that

20    the content of any footnote can be read to contain factual allegations, Defendants

21    deny each and every one of them. Likewise, to the extent the contents of the

22    graphical depictions in Figures A and B are not addressed in the text of the response

23    to the Complaint paragraph to which the graphic may relate, and/or to the extent

24    _____

25    [1] For ease of reference, Defendants refer to the former and current state plaintiffs—
     Arizona, California, Indiana, Michigan, North Carolina, and Wisconsin—by their
26    state names only, without identifying the public official through whom their claims
     were brought. Doing so is consistent with the Court's orders in this case. *See, e.g.*,
27    Dkt. 60 (Order on Motion to Dismiss). Where applicable, and unless otherwise stated,
28    references to a state include the official through whom that state's claims are asserted.

1  that the content of the graphic can be read to contain factual allegations adverse to

2  Defendants, Defendants deny each and every one of them.

3      Additionally, the May 19, 2021 Complaint includes claims by Arizona,

4  Indiana, Michigan, North Carolina, and Wisconsin, all of which were dismissed by

5  the Court on October 3, 2021. *See* Dkt. No. 60 (Order Re: Defendants' Motion to

6  Dismiss the Complaint). The remaining plaintiffs that allege claims in the

7  Complaint that survived the Court's October 3, 2021 Order, the FTC and

8  California, did not file an amended complaint following the dismissal of all claims

9  by these five states. Thus, to the extent any allegation in the Complaint is asserted

10 by Arizona, Indiana, Michigan, North Carolina, and Wisconsin—whether separately

11 or collectively with the FTC and California—that allegation is not part of this

12 action and requires no response. *See* Fed. R. Civ. P. 8(b)(1)(B) (requiring that a

13 party responding to a pleading admit or deny allegations "by an opposing party").

14     Finally, nothing in this Answer should be read to suggest that Defendants

15 waive the defense—raised in their motion to dismiss and as an affirmative

16 defense—that the Court lacks personal jurisdiction over Defendants, which are

17 holding companies that do not own, advertise, or bill for Digital Subscriber Line

18 ("DSL") services or engage in any of the challenged actions or conduct, and that are

19 not resident in this state. Despite clear and direct notice of all relevant facts in that

20 regard, Plaintiffs made the decision not to, and refused and failed to, sue the

21 separate, stand-alone Frontier subsidiaries and Incumbent Local Exchange

22 Companies ("ILECs") that own and operate the relevant infrastructure and

23 equipment and that are responsible for actually delivering the relevant services

24 offered to consumers within each state in which those services are offered.

25 Plaintiffs' knowing decision in this regard is neither an accident nor the result of

26 oversight. It is a direct attempt by the FTC to overcome the U.S. Supreme Court

27 decision in *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341 (2021),

28 apparently without care or concern for suing the proper defendants in the proper

court. Plaintiffs therefore have not sued the entities that are responsible for and control the alleged conduct that forms the basis for the allegations in each paragraph of the Complaint.[2] None of Defendants' responses to Plaintiffs' allegations in those paragraphs should be read to suggest that Defendants engage in, are responsible for, or control the conduct that is the subject of a given paragraph's allegations.

## **ANSWER**

The unnumbered paragraph preceding Paragraph 1 of the Complaint contains prefatory language describing Plaintiffs' Complaint and, thus, requires no response. To the extent a response is required, Defendants admit that the FTC and California assert the anteceding allegations in the numbered paragraphs that follow this introductory statement. Defendants further admit that this introductory statement purports to collectively refer to all plaintiffs who filed the Complaint on May 19, 2021, as "Plaintiffs." To the extent any allegation in the Complaint that refers to "Plaintiffs" includes allegations by Arizona, Indiana, Michigan, North Carolina, and Wisconsin, no response is necessary as all claims by those states were dismissed.

1. Defendants admit that the FTC purports to bring this action under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), but deny the remaining allegations in Paragraph 1. In further answer to Paragraph 1, Defendants deny that any acts or practices by Defendants are in violation of, or that Plaintiffs are entitled to any relief

---

[2] Defendants' responses to the Complaint's allegations concerning "Frontier" are consistent with Plaintiffs' definition of that term in the Complaint. Specifically, Plaintiffs define "Frontier" to mean "Frontier Communications Corp. before April 30, 2021, and Reorganized Frontier on and after April 30, 2021, unless otherwise noted." Compl. ¶ 28; *id.* ¶ 23 (defining "Reorganized Frontier" to mean "Frontier Communications Parent, Inc., Frontier Communications Intermediate, LLC, and Frontier Communications Holdings, LLC"). Thus, by Plaintiffs' own definitions, the Complaint's allegations concerning "Frontier" refer to the named Defendants only and cannot be construed to also include any Frontier subsidiary or ILEC, including the subsidiary or ILEC that would otherwise be responsible for the service or alleged conduct at issue in a given paragraph of the Complaint.

1   under, the FTC Act, and also deny that Section 13(b) of the FTC Act authorizes the

2   FTC to seek, and the Court to order, relief other than temporary, preliminary, and/or

3   permanent injunctive relief in a proper case.

4        2.     Defendants admit that this action was initially brought by Arizona,

5   California, Indiana, Michigan, North Carolina, and Wisconsin. Defendants lack

6   sufficient information to form a belief as to the truth of the allegation in Paragraph 2

7   that the Attorneys General and District Attorneys who brought those states' claims

8   did so "in their representative and official capacities as provided by state law."

9   Defendants admit that the Complaint purports to collectively refer to all states

10   identified in Paragraph 2 as the "Plaintiff States," but deny that Arizona, Indiana,

11   Michigan, North Carolina, and Wisconsin presently are plaintiffs with claims in this

12   action. To the extent any allegation in the Complaint that refers to "Plaintiff States"

13   includes allegations by Arizona, Indiana, Michigan, North Carolina, and Wisconsin,

14   no response is necessary as all claims by those states were dismissed.

15        3.     Defendants admit that the states identified in the Complaint purported

16   to bring this action pursuant to the authorities described in Paragraph 3. To the

17   extent the allegations in Paragraph 3 include allegations by Arizona, Indiana,

18   Michigan, North Carolina, and Wisconsin, no response is necessary as all claims by

19   those states were dismissed. In further answer, Defendants deny that Arizona,

20   Indiana, Michigan, North Carolina, and Wisconsin presently are plaintiffs with

21   claims or requests for relief in this action. Defendants deny that any plaintiff is

22   entitled to any relief, and also deny that Defendants have engaged or continue to

23   engage in deception or unfair acts or practices in violation of any state law. The

24   remaining allegations in Paragraph 3 contain Plaintiffs' characterization of

25   unspecified state laws and how those laws apply in this action, all of which

26   Defendants deny.

27        4.     All claims by Arizona were dismissed on October 3, 2021, and, thus,

28   the allegations in Paragraph 4 require no response. In further answer to Paragraph 4,

Defendants deny that Arizona has a claim in this action.

5. Defendants deny that they have violated any provision of the California Unfair Competition Law ("UCL") or the California False Advertising Law ("FAL"), but admit that California purports to bring this action against Defendants for alleged violations of the UCL and FAL.

6. All claims by Indiana were dismissed on October 3, 2021, and, thus, the allegations in Paragraph 6 require no response. In further answer to Paragraph 6, Defendants deny that Indiana has a claim in this action.

7. All claims by Michigan were dismissed on October 3, 2021, and, thus, the allegations in Paragraph 7 require no response. In further answer to Paragraph 7, Defendants deny that Michigan has a claim in this action.

8. All claims by North Carolina were dismissed on October 3, 2021, and, thus, the allegations in Paragraph 8 require no response. In further answer to Paragraph 8, Defendants deny that North Carolina has a claim in this action.

9. All claims by Wisconsin were dismissed on October 3, 2021, and, thus, the allegations in Paragraph 9 require no response. In further answer to Paragraph 9, Defendants deny that Wisconsin has a claim in this action.

10. Defendants deny the jurisdictional allegations in Paragraph 10.

11. Defendants deny the venue allegations in Paragraph 11 and affirmatively state that venue is improper in this District.

12. Defendants deny the allegations in Paragraph 12.

13. Defendants admit that Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), generally prohibits unfair or deceptive acts or practices in or affecting commerce, but deny that Defendants engaged in any unfair or deceptive acts or practices or otherwise violated the FTC Act. Defendants lack sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 13.

14. No response is required as to the allegations in Paragraph 14 because

5

all of Arizona's claims were dismissed.

15.   Defendants admit that the California laws cited in Paragraph 15 generally prohibit certain unlawful, deceptive, fraudulent, and misleading business conduct, but deny that Defendants engaged in any unlawful, deceptive, fraudulent, or misleading business conduct or otherwise violated any California law. Defendants deny the remaining allegations in Paragraph 15, including Plaintiffs' characterization of the laws or how they apply in this action.

16.   No response is required as to the allegations in Paragraph 16 because all of Indiana's claims were dismissed.

17.   No response is required as to the allegations in Paragraph 17 because all of Michigan's claims were dismissed.

18.   No response is required as to the allegations in Paragraph 18 because all of North Carolina's claims were dismissed.

19.   No response is required as to the allegations in Paragraph 19 because all of Wisconsin's claims were dismissed.

20.   Defendants admit that the states which filed the Complaint on May 19, 2021, purported to bring this action pursuant to the authorities described in Paragraph 20. To the extent the allegations in Paragraph 20 include allegations by Arizona, Indiana, Michigan, North Carolina, and Wisconsin, no response is required as all claims by those states were dismissed. In further response, Defendants deny that Arizona, Indiana, Michigan, North Carolina, and Wisconsin presently are plaintiffs with claims or requests for relief in this action. Defendants deny any invocation by Plaintiffs of *parens patriae* or common law authority, and deny the remaining allegations in Paragraph 20, including Plaintiffs' characterization of laws or how they apply in this action.

21.   Defendants admit that Frontier Communications Corp. was, prior to its dissolution, a Delaware corporation with its principal place of business in Connecticut. Defendants deny the remaining allegations in Paragraph 21, and

further state that Frontier Communications Corp. was improperly named as a defendant in this action.

22.     Defendants admit the allegations in Paragraph 22.

23.     Defendants admit that Frontier Communications Corporation and its affiliated entities filed a notice in bankruptcy proceedings stating that they satisfied the requirements for their plan of reorganization to become effective and that Frontier Communications Corporation stated before emerging from bankruptcy that it would dissolve and cease to exist as a legal entity on or after the effective date. Defendants deny the remaining generalized characterizations and other allegations in Paragraph 23.

24.     Defendants admit the allegations in Paragraph 24.

25.     Defendants admit the allegations in Paragraph 25.

26.     Defendants admit the allegations in Paragraph 26.

27.     Defendants admit that in connection with emergence from bankruptcy, substantially all assets of Frontier Communications Corporation vested in Frontier Communications Holdings, LLC, but deny that those assets vested in other entities.

28.     Defendants admit that the filings cited in Paragraph 28 were filed in bankruptcy proceedings, but deny Plaintiffs' generalized characterizations of those filings and/or proceedings and deny the remaining allegations in Paragraph 28.

29.     Defendants deny Plaintiffs' characterization in Paragraph 29 of the law or how it applies to this action.

30.     Defendants deny Plaintiffs' characterization in Paragraph 30 of the law or how it applies to this action. Defendants further deny the allegations in Paragraph 30 on the basis that Defendants do not own, operate, advertise, subscribe consumers to, or bill for DSL internet services that are the subject of this action.

31.     Defendants deny the allegations in Paragraph 31 on the basis that Defendants do not own, operate, advertise, subscribe consumers to, bill for, or otherwise provide internet services.

7

32.     Defendants admit that DSL technology transmits data over copper telephone wires and fiber-optic technology transmits data over thin strands of glass. Defendants deny the remaining allegations in Paragraph 32 on the basis that Defendants do not own, operate, advertise, subscribe consumers to, bill for, or otherwise provide DSL or fiber-optic internet services.

33.     Defendants deny the allegations in the first sentence of Paragraph 33 on the basis that Defendants do not own, operate, advertise, subscribe consumers to, bill for, or otherwise provide DSL internet services. Defendants deny the remaining allegations in Paragraph 33.

34.     Defendants deny the allegations in Paragraph 34 on the basis that Defendants do not own, operate, advertise, subscribe consumers to, bill for, or otherwise provide DSL internet services, nor have Defendants previously owned, operated, advertised, subscribed consumers to, billed for, or otherwise provided DSL internet services.

35.     Defendants deny the allegations in the first sentence of Paragraph 35 on the basis that Defendants do not own, operate, advertise, subscribe consumers to, bill for, or otherwise provide DSL internet services. Defendants lack sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 35, which contain generalizations and undefined terms like "many" consumers.

36.     Defendants deny the allegations in Paragraph 36 on the basis that Defendants do not own, operate, advertise, offer, subscribe consumers to, bill for, or otherwise provide DSL or fiber-optic internet services.

37.     Defendants deny the allegations in Paragraph 37 on the basis that Defendants do not own, operate, advertise, offer, subscribe consumers to, bill for, or otherwise provide DSL or fiber-optic internet services.

38.     Defendants deny the allegations in Paragraph 38 on the basis that Defendants do not own, operate, advertise, subscribe consumers to, bill for, or otherwise provide DSL internet services.

39.     Defendants lack sufficient information to confirm or deny the allegations in Paragraph 39, which do not adequately specify the research to which Plaintiffs refer.

40.     The allegations in Paragraph 40 do not define or clarify what is meant by "larger" transfers of data, "lower" download speeds, or "poor" performance and, thus, Defendants lack sufficient information to confirm or deny the allegations in Paragraph 40. Defendants admit that as a general matter faster download speeds may enable better performance of certain activities over the internet.

41.     Defendants admit that Megabits per second, or "Mbps," is a quantification of download speeds. Defendants deny the remaining allegations in Paragraph 41 on the basis that Defendants do not own, operate, advertise, market, offer, sell, subscribe consumers to, bill for, or otherwise provide DSL internet services.

42.     Defendants admit that the Megabit per second metric refers to the rate at which bits transfer over a connection, and that it is a standard metric to quantify the speed of internet service. Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegation that "many ISPs" use the Megabit per second metric to quantify the speed of internet service. Defendants deny the remaining allegations in Paragraph 42 on the basis that Defendants do not own, control, operate, advertise, subscribe consumers to, bill for, or otherwise provide DSL internet services.

43.     Defendants deny the allegations in Paragraph 43 on the basis that Defendants do not own, operate, advertise, market, offer, sell, subscribe consumers to, bill for, or otherwise provide DSL internet services.

44.     Defendants deny the allegations in Paragraph 44 on the basis that Defendants do not own, operate, advertise, market, offer, sell, subscribe consumers to, bill for, or otherwise provide DSL internet services.

45.     Defendants deny the allegations in Paragraph 45 on the basis that

9

1  Defendants do not own, operate, advertise, market, offer, sell, subscribe consumers
2  to, bill for, or otherwise provide DSL internet services.

3       46.    Defendants deny the allegations in Paragraph 46 on the basis that
4  Defendants do not own, operate, advertise, disseminate advertisements for, market,
5  offer, subscribe consumers to, bill for, or otherwise provide DSL internet services.
6  Defendants further deny that Figure A in Paragraph 46 is a complete and accurate
7  depiction of the advertisement it purports to show.

8       47.    Defendants deny the allegations in Paragraph 47 on the basis that
9  Defendants do not own, operate, advertise, market, offer, sell, subscribe consumers
10  to, bill for, or otherwise provide DSL internet services.

11       48.    Defendants deny the allegations in Paragraph 48 on the basis that
12  Defendants do not own, operate, advertise, market, distribute mailers for, subscribe
13  consumers to, bill for, or otherwise provide DSL internet services. Defendants
14  further deny that Figure B in Paragraph 48 contains a complete and accurate copy of
15  the mailer it purports to show. The image in Figure B reduces in size and renders
16  relevant language illegible, and is otherwise a distorted representation of the mailer it
17  purports to show.

18       49.    Defendants admit that Plaintiffs accurately (but deceptively) quote part
19  of the advertisement Plaintiffs purport to depict in Figure B of the Complaint.
20  Defendants deny that the quoted material in Paragraph 49 is in "tiny, inconspicuous
21  print separated from the main message of the advertisement," and deny that Figure B
22  from which Plaintiffs quote in Paragraph 49 contains a complete and accurate copy
23  of the mailer it purports to show. The image in Figure B reduces in size and renders
24  relevant language illegible, and is otherwise a distorted representation of the mailer it
25  purports to depict. Defendants deny the remaining allegations in Paragraph 49,
26  including on the basis that Defendants do not own, operate, advertise, market,
27  distribute mailers for, subscribe consumers to, bill for, or otherwise provide DSL
28  internet services.

50.    Defendants deny the allegations in Paragraph 50 on the basis that Defendants do not own, operate, control, advertise, market, send mail or display advertisements to consumers for, subscribe consumers to, bill for, or otherwise provide DSL internet services.

51.    Defendants deny the allegations in Paragraph 51 on the basis that Defendants do not own, operate, advertise, market, send consumers advertisements for, subscribe consumers to, bill for, or otherwise provide DSL internet services.

52.    Defendants deny the allegations in Paragraph 52 on the basis that Defendants do not own, operate, advertise, market, subscribe consumers to, bill for, or otherwise provide DSL internet services.

53.    Defendants deny the allegations in Paragraph 53 on the basis that Defendants do not own, operate, advertise, market, offer or direct sales representatives to offer, subscribe consumers to, bill for, or otherwise provide DSL internet services.

54.    Defendants deny the allegations in Paragraph 54 on the basis that Defendants do not own, operate, advertise, market, offer, direct or control the subscription of consumers to, or bill for DSL internet services.

55.    Defendants deny the allegations in Paragraph 55 on the basis that Defendants do not own, operate, advertise, market, offer, direct or control the subscription of consumers to, or bill for DSL internet services.

56.    Defendants deny the allegations in Paragraph 56 on the basis that Defendants do not own, operate, advertise, market, offer, direct or control the subscription of consumers to, or bill for DSL internet services.

57.    Defendants deny the allegations in Paragraph 57 on the basis that Defendants do not own, operate, advertise, market, offer, direct or control the subscription of consumers to, or bill for DSL internet services.

58.    Defendants deny the allegations in Paragraph 58 on the basis that Defendants do not own, operate, advertise, market, offer, sell, direct or control the

11

1    subscription of consumers to, or bill for DSL internet services.

2        59.    Defendants deny the allegations in Paragraph 59 on the basis that

3    Defendants do not own, operate, advertise, market, offer, direct or control the

4    subscription of consumers to, or bill for DSL internet services.

5        60.    Defendants deny the allegations in Paragraph 60 on the basis that

6    Defendants do not own, operate, advertise, market, offer, direct or control the

7    subscription of consumers to, or bill for DSL internet services.

8        61.    Defendants deny the allegations in Paragraph 61, including on the basis

9    that Defendants do not own, operate, advertise, market, offer, direct or control the

10   subscription of consumers to, sell, or bill for DSL internet services. Frontier

11   subsidiaries and/or ILECs will activate a speed package for a given customer if that

12   customer is capable of receiving 90 percent or more of the maximum speed in the

13   given service tier. Additionally, Frontier entities that advertise, market, offer, or sell

14   DSL internet service do not make express or implicit representations that a customer

15   will necessarily be able to attain a particular speed of service and, on the contrary,

16   terms and conditions expressly disclose that the represented maximum speed is not

17   necessarily available.

18       62.    Defendants deny the allegations in Paragraph 62, including on the basis

19   that Defendants do not own, operate, advertise, market, offer, direct or control the

20   subscription of consumers to, or bill for DSL internet services. Frontier subsidiaries

21   and/or ILECs will activate a speed package for a given customer if that customer is

22   capable of receiving 90 percent or more of the maximum speed in the given service

23   tier. And a customer will only pay the cost of the service tier for which the customer

24   is provisioned. While protocols have been carefully developed to ensure that speed

25   tiers align with system speed capabilities, the actual speed that an individual

26   customer will receive can vary based on many factors, including buildout and

27   infrastructure limitations beyond the provider's control. Nothing expressly or

28   impliedly conveys that the customer will be able to attain a particular speed of

service and, on the contrary, terms and conditions expressly disclose that the represented speed tier reflects a maximum system service capability speeds and not the speed a given customer will receive.

63.     Defendants deny the allegations in Paragraph 63 on the basis that Defendants do not own, operate, advertise, market, offer, direct or control the subscription of consumers to, or bill for DSL internet services.

64.     Defendants deny the allegations in Paragraph 64 on the basis that Defendants do not own, operate, advertise, market, offer, direct or control the subscription of consumers to, or bill for DSL internet services.

65.     Defendants deny the allegations in Paragraph 65 on the basis that Defendants do not own, operate, advertise, market, offer, direct or control the subscription of consumers to, or bill for DSL internet services.

66.     Defendants deny the allegations in Paragraph 66 on the basis that Defendants do not own, operate, advertise, market, offer, direct or control the subscription of consumers to, or bill for DSL internet services.

67.     Defendants deny the allegations in Paragraph 67, including on the basis that Defendants do not own, operate, advertise, market, offer, direct or control the subscription of consumers to, or bill for DSL internet services. If a service speed tier change is to be implemented, a representative of the appropriate Frontier subsidiary and/or ILEC is to explain the issue to the customer and discuss eligible service options with the customer, including refunds, modifications to the speed tier or service package at lower prices, or service termination, and the ultimate decision is up to the customer. Nothing expressly or impliedly conveys that the customer will always be able to attain a particular speed of service and, to the contrary, relevant disclosures and terms and conditions explain that the represented speed tier reflects system service capability speeds and that the maximum speed is an up to or as fast as speed that is not guaranteed.

68.     Defendants deny the allegations in Paragraph 68 on the basis that

Defendants do not own, operate, advertise, market, offer, direct or control the subscription of consumers to, or bill for DSL internet services.

69.     Defendants deny any suggestion in Paragraph 69 that customers are guaranteed that they will always be able to attain a particular internet speed, but admit that provisioning generally sets an upper limit on speed. Defendants deny the remaining allegations in Paragraph 69 on the basis that Defendants do not own, operate, advertise, market, offer, direct or control the subscription of consumers to, or bill for DSL internet services.

70.     Defendants deny the allegations in Paragraph 70, including on the basis that Defendants do not own, operate, advertise, market, offer, direct or control the subscription of consumers to, or bill for DSL internet services. Frontier subsidiaries and/or ILECs activate a speed package for a given customer if that customer is capable of receiving 90 percent or more of the maximum speed in the given service tier. Regardless of whether the company upgrades or downgrades the customer at provisioning, the customer will only pay the cost of the service tier for which the customer is provisioned. Further, if a service tier change must be implemented, the technician will explain the issue to the customer and discuss with the customer eligible service options, including refunds, modifications to the speed tier or service package at lower prices, or service termination, and the ultimate decision is up to the customer.

71.     Defendants deny the allegations in Paragraph 71, including on the basis that Defendants do not own, operate, advertise, market, offer, direct or control the subscription of consumers to, or bill for DSL internet services.

72.     Defendants deny the allegations in Paragraph 72, including on the basis that Defendants do not own, operate, advertise, market, offer, direct or control the subscription of consumers to, or bill for DSL internet services.

73.     Defendants deny the allegations in Paragraph 73, including on the basis that Defendants do not own, operate, advertise, market, offer, direct or control the

14

subscription of consumers to, or bill for DSL internet services. Frontier subsidiaries and/or ILECs activate a speed package for a given customer if that customer is capable of receiving 90 percent or more of the maximum speed in the given service tier, and customers only pay the cost of the service tier for which the customer is provisioned.

74.    Defendants admit that a consultant was hired to provide guidance as part of cross-functional working groups addressing certain issues, but deny the remaining allegations in Paragraph 74. The working groups determined that no conclusions could be reached based on the consultant's reports, those reports do not support the allegations in Paragraph 74, and Paragraph 74 misrepresents the reports.

75.    Defendants deny the allegations in Paragraph 75, including on the basis that Defendants do not own, operate, advertise, market, offer, provide subscribe consumers to, or bill, charge, collect payment or attempt to collect payment for DSL internet services.

76.    Defendants admit that, as with any company that provides consumer goods or services, some consumers complain about various issues, but deny the remaining characterizations of those complaints and other allegations in Paragraph 76, and deny that Defendants are responsible for, own, or operate DSL internet services.

77.    Defendants lack sufficient knowledge or information to confirm or deny the allegations in Paragraph 77. To the extent the allegations in Paragraph 77 suggest that Defendants own, operate, advertise, market, offer, direct or control the subscription of consumers to, or bill for DSL internet services, or are otherwise in any way responsible for the provision of those services, Defendants deny the allegations in this paragraph.

78.    Defendants admit that the Attorneys General of West Virginia, New York, Nevada, Pennsylvania, Washington, and Minnesota have brought enforcement actions against certain Frontier entities. Defendants deny Plaintiffs'

characterizations of those actions in the remaining allegations in Paragraph 78.

79.   Defendants deny the allegations in Paragraph 79.

80.   Defendants deny the allegations in Paragraph 80.

81.   Defendants admit that Plaintiffs accurately quote Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), but deny that law's applicability in this action and deny any suggestion in Paragraph 81 that Defendants violated the FTC Act.

82.   Defendants deny Plaintiffs characterization in Paragraph 82 of the law or how it applies in this action.

83.   Defendants admit that Paragraph 83 sets forth an accurate description of 15 U.S.C. § 45(n), but deny that law's applicability in this action and deny any suggestion in Paragraph 83 that Defendants violated the FTC Act.

84.   Defendants deny the allegations in Paragraph 84.

85.   Defendants deny the allegations in Paragraph 85.

86.   Defendants deny the allegations in Paragraph 86.

87.   Defendants deny the allegations in Paragraph 87.

88.   Defendants deny the allegations in Paragraph 88.

89.   Defendants deny the allegations in Paragraph 89.

90.   No answer is required as to Paragraph 90 as all of Arizona's claims, including all allegations in Count III, were dismissed.

91.   No answer is required as to Paragraph 91 as all of Arizona's claims, including all allegations in Count III, were dismissed.

92.   No answer is required as to Paragraph 92 as all of Arizona's claims, including all allegations in Count III, were dismissed.

93.   No answer is required as to Paragraph 93 as all of Arizona's claims, including all allegations in Count III, were dismissed.

94.   No answer is required as to Paragraph 94 as all of Arizona's claims, including all allegations in Count III, were dismissed.

95.   Defendants deny the allegations in Paragraph 95.

96.   Defendants deny the allegations in Paragraph 96.

97.   Defendants deny the allegations in Paragraph 97.

98.   Defendants deny the allegations in Paragraph 98.

99.   Defendants deny the allegations in Paragraph 99.

100.   Defendants incorporate by reference their prior and subsequent answers as though set forth here in full.

101.   Defendants deny the allegations in Paragraph 101.

102.   No answer is required as to the allegations in Paragraph 102 as all of Indiana's claims, including all allegations in Count VI, were dismissed.

103.   No answer is required as to the allegations in Paragraph 103 as all of Indiana's claims, including all allegations in Count VI, were dismissed.

104.   No answer is required as to the allegations in Paragraph 104 as all of Indiana's claims, including all allegations in Count VI, were dismissed.

105.   No answer is required as to the allegations in Paragraph 105 as all of Indiana's claims, including all allegations in Count VI, were dismissed.

106.   No answer is required as to the allegations in Paragraph 106 as all of Indiana's claims, including all allegations in Count VI, were dismissed.

107.   No answer is required as to the allegations in Paragraph 107 as all of Indiana's claims, including all allegations in Count VI, were dismissed.

108.   No answer is required as to the allegations in Paragraph 108 as all of Indiana's claims, including all allegations in Count VI, were dismissed.

109.   No answer is required as to the allegations in Paragraph 109 as all of Indiana's claims, including all allegations in Count VI, were dismissed.

110.   No answer is required as to the allegations in Paragraph 110 as all of Indiana's claims, including all allegations in Count VI, were dismissed.

111.   No answer is required as to the allegations in Paragraph 111 as all of Michigan's claims, including all allegations in Count VII, were dismissed.

112.    No answer is required as to the allegations in Paragraph 112 as all of Michigan's claims, including all allegations in Count VII, were dismissed.

113.    No answer is required as to the allegations in Paragraph 113 as all of Michigan's claims, including all allegations in Count VII, were dismissed.

114.    No answer is required as to the allegations in Paragraph 114 as all of Michigan's claims, including all allegations in Count VII, were dismissed.

115.    No answer is required as to the allegations in Paragraph 115 as all of Michigan's claims, including all allegations in Count VII, were dismissed.

116.    No answer is required as to the allegations in Paragraph 116 as all of North Carolina's claims, including all allegations in Counts VIII through IX, were dismissed.

117.    No answer is required as to the allegations in Paragraph 117 as all of North Carolina's claims, including all allegations in Counts VIII through IX, were dismissed.

118.    No answer is required as to the allegations in Paragraph 118 as all of North Carolina's claims, including all allegations in Counts VIII through IX, were dismissed.

119.    No answer is required as to the allegations in Paragraph 119 as all of North Carolina's claims, including all allegations in Count VIII, were dismissed.

120.    No answer is required as to the allegations in Paragraph 120 as all of North Carolina's claims, including all allegations in Count VIII, were dismissed.

121.    No answer is required as to the allegations in Paragraph 121 as all of North Carolina's claims, including all allegations in Count VIII, were dismissed.

122.    No answer is required as to the allegations in Paragraph 122 as all of North Carolina's claims, including all allegations in Count VIII, were dismissed.

123.    No answer is required as to the allegations in Paragraph 123 as all of North Carolina's claims, including all allegations in Count IX, were dismissed.

124.    No answer is required as to the allegations in Paragraph 124 as all of

North Carolina's claims, including all allegations in Count IX, were dismissed.

125.   No answer is required as to the allegations in Paragraph 125 as all of North Carolina's claims, including all allegations in Count IX, were dismissed.

126.   No answer is required as to the allegations in Paragraph 126 as all of North Carolina's claims, including all allegations in Count IX, were dismissed.

127.   No answer is required as to the allegations in Paragraph 127 as all of Wisconsin's claims, including all allegations in Counts X through XVI, were dismissed.

128.   No answer is required as to the allegations in Paragraph 128 as all of Wisconsin's claims, including all allegations in Count X, were dismissed.

129.   No answer is required as to the allegations in Paragraph 129 as all of Wisconsin's claims, including all allegations in Count X, were dismissed.

130.   No answer is required as to the allegations in Paragraph 130 as all of Wisconsin's claims, including all allegations in Count X, were dismissed.

131.   No answer is required as to the allegations in Paragraph 131 as all of Wisconsin's claims, including all allegations in Count X, were dismissed.

132.   No answer is required as to the allegations in Paragraph 132 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

133.   No answer is required as to the allegations in Paragraph 133 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

134.   No answer is required as to the allegations in Paragraph 134 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

135.   No answer is required as to the allegations in Paragraph 135 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

136.   No answer is required as to the allegations in Paragraph 136 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

137.   No answer is required as to the allegations in Paragraph 137 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

138.   No answer is required as to the allegations in Paragraph 138 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

139.   No answer is required as to the allegations in Paragraph 139 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

140.   No answer is required as to the allegations in Paragraph 140 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

141.   No answer is required as to the allegations in Paragraph 141 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

142.   No answer is required as to the allegations in Paragraph 142 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

143.   No answer is required as to the allegations in Paragraph 143 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

144.   No answer is required as to the allegations in Paragraph 144 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

145.   No answer is required as to the allegations in Paragraph 145 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

146.   No answer is required as to the allegations in Paragraph 146 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

147.   No answer is required as to the allegations in Paragraph 147 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

148.   No answer is required as to the allegations in Paragraph 148 as all of Wisconsin's claims, including all allegations in Count XI, were dismissed.

149.   No answer is required as to the allegations in Paragraph 149 as all of Wisconsin's claims, including all allegations in Count XII, were dismissed.

150.   No answer is required as to the allegations in Paragraph 150 as all of Wisconsin's claims, including all allegations in Count XII, were dismissed.

151.   No answer is required as to the allegations in Paragraph 151 as all of Wisconsin's claims, including all allegations in Count XII, were dismissed.

152. No answer is required as to the allegations in Paragraph 152 as all of Wisconsin's claims, including all allegations in Count XII, were dismissed.

153. No answer is required as to the allegations in Paragraph 153 as all of Wisconsin's claims, including all allegations in Count XII, were dismissed.

154. No answer is required as to the allegations in Paragraph 154 as all of Wisconsin's claims, including all allegations in Count XII, were dismissed.

155. No answer is required as to the allegations in Paragraph 155 as all of Wisconsin's claims, including all allegations in Count XII, were dismissed.

156. No answer is required as to the allegations in Paragraph 156 as all of Wisconsin's claims, including all allegations in Count XII, were dismissed.

157. No answer is required as to the allegations in Paragraph 157 as all of Wisconsin's claims, including all allegations in Count XIII, were dismissed.

158. No answer is required as to the allegations in Paragraph 158 as all of Wisconsin's claims, including all allegations in Count XIII, were dismissed.

159. No answer is required as to the allegations in Paragraph 159 as all of Wisconsin's claims, including all allegations in Count XIII, were dismissed.

160. No answer is required as to the allegations in Paragraph 160 as all of Wisconsin's claims, including all allegations in Count XIII, were dismissed

161. No answer is required as to the allegations in Paragraph 161 as all of Wisconsin's claims, including all allegations in Count XIII, were dismissed.

162. No answer is required as to the allegations in Paragraph 162 as all of Wisconsin's claims, including all allegations in Count XIII, were dismissed.

163. No answer is required as to the allegations in Paragraph 163 as all of Wisconsin's claims, including all allegations in Count XIII, were dismissed.

164. No answer is required as to the allegations in Paragraph 164 as all of Wisconsin's claims, including all allegations in Count XIII, were dismissed.

165. No answer is required as to the allegations in Paragraph 165 as all of Wisconsin's claims, including all allegations in Count XIII, were dismissed.

166.    No answer is required as to the allegations in Paragraph 166 as all of Wisconsin's claims, including all allegations in Count XIV, were dismissed.

167.    No answer is required as to the allegations in Paragraph 167 as all of Wisconsin's claims, including all allegations in Count XIV, were dismissed.

168.    No answer is required as to the allegations in Paragraph 168 as all of Wisconsin's claims, including all allegations in Count XIV, were dismissed.

169.    No answer is required as to the allegations in Paragraph 169 as all of Wisconsin's claims, including all allegations in Count XIV, were dismissed.

170.    No answer is required as to the allegations in Paragraph 170 as all of Wisconsin's claims, including all allegations in Count XV, were dismissed.

171.    No answer is required as to the allegations in Paragraph 171 as all of Wisconsin's claims, including all allegations in Count XV, were dismissed.

172.    No answer is required as to the allegations in Paragraph 172 as all of Wisconsin's claims, including all allegations in Count XV, were dismissed.

173.    No answer is required as to the allegations in Paragraph 173 as all of Wisconsin's claims, including all allegations in Count XV, were dismissed.

174.    No answer is required as to the allegations in Paragraph 174 as all of Wisconsin's claims, including all allegations in Count XVI, were dismissed.

175.    No answer is required as to the allegations in Paragraph 175 as all of Wisconsin's claims, including all allegations in Count XVI, were dismissed.

176.    No answer is required as to the allegations in Paragraph 176 as all of Wisconsin's claims, including all allegations in Count XVI, were dismissed.

177.    No answer is required as to the allegations in Paragraph 177 as all of Wisconsin's claims, including all allegations in Count XVI, were dismissed.

178.    Defendants deny any and all allegations of wrongdoing and deny that Plaintiffs are entitled to any relief whatsoever by this Court. Defendants provide no response to the allegations in Paragraph 178 to the extent they relate to the dismissed claims of Arizona, Indiana, Michigan, North Carolina, and/or Wisconsin.

Defendants deny the remaining allegations in Paragraph 178.

179.   Defendants admit that Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), generally permits a court to grant injunctive relief in proper cases, but deny Plaintiffs' characterization of that law and/or its application in this action.

180.   Defendants deny the allegations in Paragraph 180, and further deny that any claim is properly asserted against Defendants in this Court or that any relief is properly sought against Defendants. To the extent the allegations in Paragraph 180 relate to or assert claims by Arizona, Indiana, Michigan, North Carolina, or Wisconsin, no answer is required as all claims by those states were dismissed.

181.   No answer is required as to the allegations in Paragraph 181 setting forth legal conclusions regarding Arizona's laws and concerning Arizona's claims because all of Arizona's claims were dismissed.

182.   Defendants deny that Plaintiffs' characterization in Paragraph 182 of the law or how it applies in this action, and further deny that any Plaintiff is entitled to any relief by this Court.

183.   No answer is required as to the allegations in Paragraph 183 setting forth legal conclusions regarding Indiana's laws and concerning Indiana's claims because all of Indiana's claims were dismissed.

184.   No answer is required as to the allegations in Paragraph 184 setting forth legal conclusions regarding Michigan's laws and concerning Michigan's claims because all of Michigan's claims were dismissed.

185.   No answer is required as to the allegations in Paragraph 185 setting forth legal conclusions regarding North Carolina's laws and concerning North Carolina's claims because all of North Carolina's claims were dismissed.

186.   No answer is required as to the allegations in Paragraph 186 setting forth legal conclusions regarding Wisconsin's laws and concerning Wisconsin's claims because all of Wisconsin's claims were dismissed.

To the extent that an answer may be required as to the FTC's Prayer for Relief, Defendants deny each and every allegation contained therein, and deny that any Plaintiff is entitled to the relief requested in the Complaint.

No answer is required as to Arizona's Prayer for Relief because Arizona's claims were dismissed.

To the extent that an answer may be required as to California's Prayer for Relief, Defendants deny each and every allegation contained therein, and deny that any Plaintiff is entitled to the relief requested in the Complaint.

No answer is required as to Indiana's Prayer for Relief because Indiana's claims were dismissed.

No answer is required as to Michigan's Prayer for Relief because Michigan's claims were dismissed.

No answer is required as to North Carolina's Prayer for Relief because North Carolina's claims were dismissed.

No answer is required as to Wisconsin's Prayer for Relief because Wisconsin's claims were dismissed.

## DENIAL

Defendants deny each and every allegation of the Complaint not specifically admitted above. Defendants expressly reserve the right to amend this Answer as additional information is discovered in the course of these proceedings.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof that they would not otherwise bear, Defendants assert the following additional defenses as to the claims against them:

## FIRST DEFENSE

### (Lack of Personal Jurisdiction)

Plaintiffs' claims are barred, in whole or part, for lack of personal jurisdiction over Defendants, none of whom engages in the conduct forming the basis of Plaintiffs' Complaint and none of whom is a proper party to this action.

24

Specifically, Defendants are holding companies. None of them (i) owns, operates, or maintains an internet or telecommunications network; (ii) advertises, markets, promotes, offers for sale, or sells internet or telecommunications products or services; or (iii) bills for internet or telecommunications products or services. Instead, it is Citizens Telecom Services Company, LLC—an indirect subsidiary of Frontier Communications Holdings, LLC—that is responsible for all digital display advertisements, direct mail advertisements, and point of sale advertising (whether over the phone or on the website), pricing of internet services, and sending monthly bills to consumers. Further, in each state in which telecommunications or internet services are provided, those services are offered and provided by ILECs and other Frontier Communications Holdings, LLC subsidiaries that are licensed to provide the services in each state. The ILEC(s) in each state is responsible for actually delivering the Frontier services offered to consumers within that state.

Plaintiffs have not sued Citizens Telecom Services Company, LLC or any ILEC and, therefore, have not sued the entities that are responsible for and control the alleged unlawful conduct. *See, e.g.*, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017) (holding that a manufacturer was not subject to personal jurisdiction when its only connection with California was through its subsidiary). Because Plaintiffs have sued entities that do not engage in the challenged actions and that are not resident in this state, Plaintiffs have failed to demonstrate this Court's personal jurisdiction over Defendants.

## SECOND DEFENSE

### (No Jurisdiction Over Alleged Conduct of Common Carrier)

As it pertains to the alleged time period in the Complaint, at least prior to June 11, 2018, the FTC lacked jurisdiction over alleged unfair or deceptive practices stemming from a Frontier entity's conduct as a common carrier pursuant to 15 U.S.C. § 45(a)(2) (exempting "common carriers subject to the Acts to regulate commerce" from FTC jurisdiction). The FTC Act's common carrier exemption is

25

"activity-based," providing immunity from FTC regulation when a common carrier engages in the provision of common carrier services. *See FTC v. AT&T Mobility LLC*, 883 F.3d 848, 863-64 (9th Cir. 2018). Prospective reclassification of a non-common-carriage service to a common carriage service removes the FTC of jurisdiction over conduct occurring after the reclassification order. *Id.* at 864.

Beginning on June 12, 2015, the Federal Communications Commission ("FCC") reclassified broadband internet access service ("BIAS") providers—including providers of Copper Services like the Frontier entities that provide those Services—as common carriers subject to Title II of the Communications Act. *See* Protecting and Promoting the Open Internet, GN Docket No. 14-28, Report and Order on Remand, Declaratory Ruling, and Order, 30 FCC Rcd 5601 (Rel. Mar. 12, 2015; Eff. Jun. 12, 2015). This classification lasted until June 11, 2018, the effective date of the FCC's subsequent reclassification of BIAS as information services not subject to common carrier regulation. *See* Restoring Internet Freedom, WC Docket No. 17-108, Declaratory Ruling, Report and Order, and Order, 33 FCC Rcd 311 (Rel. Jan. 4, 2018; Eff. Jun. 11, 2018); *see also* Public Notice, Wireline Competition Bureau Announces Effective Date of Restoring Internet Freedom Order, DA 18-485 (Rel. May 11, 2018). During this period, the Frontier entities that provide the services the subject of Plaintiffs' Complaint were common carriers with respect to the provision of Copper Services.

Accordingly, the FTC lacks jurisdiction over any alleged conduct occurring between June 12, 2015, and June 11, 2018—the period in which Frontier's Copper Services were classified as common carrier services exempt from the FTC's purview.

## THIRD DEFENSE

### (Statute of Limitations)

No damages or other relief can be recovered by California to the extent the Complaint and each purported cause of action alleged therein is barred, in whole or part, by an applicable statute of limitations.

Specifically, California's claims in Counts IV and V are limited by the respective statutes of limitations applicable to such claims. California's claims under California Business and Professions Code § 17500 (Count IV) are subject to a three-year statute of limitations. Cal. Bus. & Prof. Code § 17500 *et seq.*; Cal. Code Civ. Proc. § 338(a). California's claims under California Business and Professions Code § 17200 (Count V) are subject to a four-year statute of limitations. Cal. Bus. & Prof. Code § 17208.

Thus, California's claims in Count IV are barred to the extent they challenge conduct that accrued before May 19, 2018. California's claims in Count V are barred to the extent they challenge conduct that accrued before May 19, 2017. *See, e.g.*, *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198-99, 292 P.3d 871, 879-81 (2013) ("When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period."); *Beaver v. Tarsadia Hotels*, 816 F.3d 1170 (9th Cir. 2016) (explaining that a California Unfair Competition Law claim generally accrues when each of the elements of the cause of action is satisfied); Compl. ¶¶ 99, 101 (alleging Frontier's conduct within the three and four years preceding the filing of the Complaint violated California Business and Professions Code § 17500 and § 17200, respectively).

## PLAINTIFFS NOT ENTITLED TO JURY TRIAL/NO JURY TRIAL DEMANDED BY DEFENDANTS

Plaintiffs are not entitled to a jury trial. Defendants do not request a jury trial.

27

1

## **PRAYER FOR RELIEF**

2          WHEREFORE, Defendants pray that the Court grant judgment against

3  Plaintiffs on all counts asserted in the Complaint and order that Plaintiffs take

4  nothing; enter judgment in favor of Defendants; dismiss the Complaint with

5  prejudice; award Defendants their costs and attorney's fees incurred in defending

6  this action, according to law and contract; and grant such other and further relief as

7  the Court deems just and proper.

8

9  Dated:  November 22, 2021              MAYER BROWN LLP

10                                        Dale J. Giali
                                          Keri E. Borders
                                          Robert S. Harrell
11                                        Kathryne M. Gray

12
                                          By:  /s/ *Dale J. Giali*
13                                             Dale J. Giali
                                               Attorneys for Defendants
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28