JS6

1
2
3                    UNITED STATES DISTRICT COURT
4                   CENTRAL DISTRICT OF CALIFORNIA

5   FEDERAL TRADE COMMISSION and          Case No. 2:21-cv-4155 RGK-MAA
6   THE PEOPLE OF THE STATE OF
    CALIFORNIA,
7                                          [Proposed]
                  Plaintiffs,              STIPULATED ORDER FOR
8                                          PERMANENT INJUNCTION,
                                           MONETARY JUDGMENT, AND
9             v.                           OTHER RELIEF  [97]
10  FRONTIER COMMUNICATIONS
11  CORPORATION, et al.,
12
                  Defendants.
13

14        Plaintiffs, the Federal Trade Commission ("Commission" or "FTC") and the
15
    People of the State of California ("California," or the "People"), by and through the
16
17  District Attorneys of Los Angeles County and Riverside County (collectively,
18  "Plaintiffs") filed their Complaint for Preliminary Injunction, Permanent Injunction,
19
20  Monetary Relief and Other Relief ("Complaint"), in this matter, pursuant to Section
21  13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and
22
23  California Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 et seq., and the
24  California False Advertising Law ("FAL"), Bus. & Prof. Code § 17500, et seq.  On or
25
26  about April 30, 2021, Defendant Frontier Communications Corp. dissolved and
27  substantially all of its assets vested in Defendant Frontier Communications Holdings,
28
                                          1

LLC, which in turn is wholly owned by Defendant Frontier Communications Intermediate, LLC, which in turn is wholly owned by Frontier Communications Parent, Inc. (hereinafter collectively referred to as "Defendants").  Plaintiffs and Defendants stipulate to the entry of this Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

**FINDINGS**

1. This Court has subject matter jurisdiction over this matter.

2. The Complaint charges that Defendants participated in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and Sections 17500 and 17200 of California Business and Professions Code, Cal. Bus. & Prof. Code §§ 17500, 17200, in connection with the marketing and sale of residential digital subscriber line ("DSL") Internet service and the billing, charging, or collecting for that DSL Internet service.

3. Defendants neither admit nor deny any of the claims or allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendants admit the facts necessary to establish personal jurisdiction.

4.     Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.

5.     Defendants and Plaintiffs waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A.     "**Advertised Speed**" means the download speed advertised or offered, including at point of sale, in association with a specific Internet Service Plan, such as "18 Mbps," "As Fast As 18 Mbps," "Max Speeds As Fast As 18 Mbps," or "9 to 18 Mbps."

B.     "**Clear(ly) and Conspicuous(ly)**" means that a required disclosure is difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.     In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be made visually or audibly.

2.     A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3

3.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

C.      "**Close Proximity**" means that the disclosure is very near the triggering representation.  For example, a disclosure made through a hyperlink, pop-up, interstitial, or other similar technique is not in close proximity to the triggering representation.

D.    **"Congestion Report"** means Frontier's "Monthly DSLAM Congestion Report," which provides congestion information for all DSLAM uplinks and the circuits that affect more than one DSLAM, including Host, Aggregator, and BRAS uplinks.

E.    "**Customer**" means a consumer who subscribes to an Internet Service Plan with an Advertised Speed.

F.    "**Defendants**" means Frontier Communications Corporation,[1] Frontier Communications Parent, Inc., Frontier Communications Intermediate, LLC, Frontier Communications Holdings, LLC, and their successors and assigns.

G.    "**DSL**" means digital subscriber line.

H.    "**DSLAM**" means DSL access multiplexer.

I.     "**Existing Customer**" means a Customer who is already subscribed to an Internet Service Plan with an Advertised Speed and who is not a New Customer.  Customers who subscribe to an Internet Service plan in the thirty (30) day period after entry of this Order will be considered Existing Customers.

J.    "**Internet Service Plan**" means a service to provide residential Internet access via DSL.

K.    "**Material Restriction**" means a restriction on the amount or speed of Internet access that is likely to affect a Customer's purchase or use of the Internet Service Plan.

---

[1] Defendant Frontier Communications Corp. dissolved on or about April 30, 2021.

5

L.     "**New Customer**" means a person who becomes a Customer thirty (30) days or more after entry of this Order, *i.e.*, a person who subscribes to an Internet Service Plan with an Advertised Speed, an Existing Customer who changes service plans to an Internet Service Plan with an Advertised Speed, or both.

M.     "**Provision**" and "**Provisioned**" refer to the Defendant's setting of the speed on Defendant's network for a Customer's DSL Internet service.

N.     "**Speed Assessment Procedure**" means a procedure, algorithm, process, or data analysis, based on competent and reliable evidence, for assessing the speed at which Defendant is able to provide DSL Internet service to a residential address.  For purposes of this Definition and references hereto, "competent and reliable evidence" means tests, including loop tests, analyses, research, or studies that have (1) been conducted and evaluated in an objective manner by qualified personnel, and (2) are generally accepted to yield accurate and reliable results, and provides a reasonable basis for representations concerning an Advertised Speed, such as the process set forth in Exhibit A.

I.     **PROHIBITION AGAINST MISREPRESENTING INTERNET SERVICES**

IT IS ORDERED that Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, or sale of any Internet Service Plan, are permanently restrained and enjoined from, expressly or by implication:

A.   Advertising or marketing Internet Service Plans with Advertised Speeds:

1.   in television and radio advertisements or other ads disseminated to or meant for a general audience and that contain Advertised Speed claims, unless Defendants Clearly and Conspicuously disclose that the maximum Advertised Speeds may not be available in a consumer's area if that is the case; and that the actual speed a Customer is likely to be able to obtain is subject to multiple factors, if that is the case;

2.   in Internet advertisements or other advertisements that appear when a consumer has provided his or her residential address, or if Defendants have targeted the consumers based on their residential address or zip code, if the maximum Advertised Speed exceeds what is available in those consumers' zip codes;

3.   in mailer advertisements or other advertisements targeted to consumers based on their geographic area or neighborhood, if the maximum Advertised Speed exceeds what is available to the consumers in the geographic area or neighborhood receiving such advertisements.

B.   Misrepresenting the amount or speed of data transmission that an Internet Service Plan will provide;

C.   Making any representation about the amount or speed of data transmission without disclosing, Clearly and Conspicuously to the representation, all Material Restrictions to obtaining the represented amount or speed of data transmission.  For purposes of this Order:

1.     For any representation that an Internet Service Plan will deliver an Advertised Speed, the advertisement must disclose Clearly and Conspicuously and in Close Proximity to the representation:

a) the range of speeds available for that tier, such as "6.1 Mbps to 12 Mbps download"; and

b) that the average speed may be lower than the maximum speed represented, if that is the case.

2.     For internet ads or mailer ads, if the actual speed a Customer is likely to be able to obtain is subject to multiple factors, the advertisement must contain a Clear and Conspicuous link or website location to a Clear and Conspicuous disclosure that states that actual speed is subject to multiple factors, such as (i) the effect of WiFi; (ii) multiple users on the same account; (iii) device limitations; and (iv) network congestion.

and

D.     Misrepresenting the performance or central characteristics of an Internet Service Plan.

## II.     PROHIBITED SUBSCRIPTION AND BILLING PRACTICES

IT IS ORDERED that, beginning 60 days after entry of this Order, Defendants, Defendants' officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with any Internet Service Plan, are permanently

restrained and enjoined from:

A.      At the point of sale, subscribing or upgrading any New Customer to an Internet Service Plan with an Advertised Speed unless the geographic location of the New Customer's residential address provides reason to believe that Defendants can provide service at the Advertised Speed to the New Customer;

B.      Provisioning any New Customer for an Internet Service Plan with an Advertised Speed unless the Customer is Provisioned within 10% of the maximum Advertised Speed or higher for that Internet Service Plan, provided that if a Customer cannot be Provisioned within 10% of the maximum Advertised Speed or higher, Defendant shall notify the New Customer as set forth in Section III.B of this Order;

C.      Subscribing any New Customer to an Internet Service Plan with service to be provided by a DSLAM for which Defendants' Congestion Reports indicate that the DSLAM has had an average peak utilization of 90% or greater during at least the three months prior to service installation;

D.      Billing, charging, collecting, or attempting to collect from any New Customer the costs or fees for an Internet Service Plan with an Advertised Speed unless a Speed Assessment Procedure performed at the time of service installation, such as the one set forth in Exhibit A, provides reason to believe that Defendants can provide service within 10% of the maximum Advertised Speed or higher to the New Customer's residential address; *provided*, *however*, that Defendants shall not be deemed to be in

violation of this Section II.D if the Customer continues with the current Internet Service

Plan after receiving written notice as provided in Section III of this Order; and

E.     Billing, charging, collecting, or attempting to collect from any Existing

Customer or New Customer the costs or fees for an Internet Service Plan with an

Advertised Speed if, after receipt of an inquiry or complaint asserting that the

Customer's Internet speed experienced is slower than the Advertised Speed and the

Customer requests or it is otherwise clear from the communication that Defendant

should investigate or take action to address service speed, Defendants do not, at their

option, (a) initiate a review to respond to the Customer's complaint, such as through a

Speed Assessment Procedure comparable to the one set forth in Exhibit B, and if the

review reveals that the Customer is unable to receive at least 90% of the maximum

Advertised Speed or higher, Defendants shall issue a notice in the form shown in

Attachment D, or in such form approved in writing by the Commission or its designee;

or (b) issue a notice in the form shown in Attachment D, or in such form approved in

writing by the Commission or its designee.  Defendants shall issue the notice via any

method Defendants use to communicate with the Customer (including but not limited to

mail, e-mail, or text message, which may contain a hyperlink).  Defendants' Notice

described in this Section shall:

          1.     Offer the Customer the option to (i) continue with the current Internet

Service Plan; (ii) discontinue the Internet Service Plan without incurring any

additional fee associated with an Internet Service Plan, such as an early termination fee, for cancelling the Internet Service Plan; or (iii) move to another Internet Service plan product tier in which the Customer can be Provisioned at a minimum of 90% of the maximum Advertised Speed; and

2.      Not include anything in or with the Notice or email other than the Notice in the form shown in Attachment D, or in such form approved in writing by the Commission or its designee, including any billing statements or marketing messages.

## III.    REQUIRED ACTIONS FOR NEW AND UPGRADING CUSTOMERS

IT IS FURTHER ORDERED that Defendants will, not later than 60 days after the entry of this Order, or by October 31, 2022, whichever is later (the "effective date of this Section"):

A.      Clearly and Conspicuously disclose, to all New Customers, at or before the point of sale or change in Internet Service Plan with an Advertised Speed: the maximum Advertised Speed, the range of Internet service speeds Defendants have reason to believe the New Customer is likely to receive based on the geographic location of the New Customer's residential address, and how such speeds may impact the New Customer's use of certain online content and services, *e.g.*, streaming or gaming;

B.      Within 10 business days of the time Internet service with an Advertised Speed is installed, whether by a technician, self-installation, or another method, or within

11

10 business days of the effective date of this Section, Defendants shall provide New Customers who have been Provisioned at less than the maximum Advertised Speed for their Internet Service Plan with a notice in the form shown in Attachment A, or in such form approved in writing by the Commission or its designee, via any method Defendants use to communicate with the Customer (including but not limited to mail, e-mail, or text message, which may contain a hyperlink).  Defendants' Notice described in this Section shall:

1.     Clearly and Conspicuously inform the New Customer of the maximum Advertised Speed for the Internet Service Plan to which the New Customer is subscribed; the maximum speed for which the New Customer is Provisioned; the range of Internet service speeds Defendants have reason to believe the New Customer is likely to receive based on a Speed Assessment Procedure performed at the time of service installation, such as the one set forth in Exhibit A; and how such speeds may impact the New Customer's access to various Internet services, such as streaming or gaming;

2.     Offer the New Customer the options to (i) discontinue the Internet Service Plan without incurring any additional fee associated with an Internet Service Plan, such as an early termination fee, for cancelling the Internet Service Plan, (ii) move to another Internet Service Plan product tier for which the New Customer can be Provisioned at a minimum of 90% of the maximum Advertised

Speed, or (iii) continue with the current Internet Service Plan, in the form shown in Attachment A, or in such form approved in writing by the Commission or its designee.  If the New Customer elects to discontinue the Internet Service Plan, Defendants shall refund or waive any applicable installation, service connection, and early termination fees;

3.     Not include anything in or with the Notice or email other than the Notice in the form shown in Attachment A, or in such form approved in writing by the Commission or its designee, including any billing statements or marketing messages.

4.     In States in which Defendants and/or Defendants' subsidiaries or affiliates have entered a settlement with a state regulator concerning Advertised Speeds prior to the effective date of this Order, Defendants may, in place of the Notice in the form shown in Attachment A, or in such form approved in writing by the Commission or its designee, use the form of notice agreed to with such State to provide the consumer disclosures described in Section III.B.1 of this Order, and the options to discontinue, change, or continue Internet Service Plans described in Section III.B.2.  In other States, Defendants shall use the form of notice in the form shown in Attachment A, or in such form approved in writing by the Commission or its designee.

## IV.   REQUIRED ACTIONS REGARDING EXISTING CUSTOMERS

IT IS FURTHER ORDERED that, within 90 days after the entry of this Order, or by October 31, 2022, whichever is later, Defendants will identify each Existing Customer with an Internet Service Plan who has not received notice pursuant to Defendants' settlement with a state regulator concerning Advertised Speeds for whom (i) the Provisioned Speed is less than the maximum Advertised Speed to which the Customer is subscribed, or (ii) the Provisioned Speed cannot be readily ascertained, and (iii) Customers identified in connection with Defendants' ongoing reporting obligations under Sections VIII.D.3–5 of this Order.  Defendants shall not unilaterally discontinue Internet Service to Customers solely on account of their obligations under this Order.

For each Customer identified by Defendants under this Section who has not previously received notice under this Section or Section II, III or V of this Order:

A.   Defendants shall, for Existing Customers for whom the Provisioned Speed is less than the maximum Advertised Speed, issue a notice in the form shown in Attachment B, or in such form approved in writing by the Commission or its designee, via any method Defendants use to communicate with the Existing Customer (including but not limited to mail, e-mail, or text message, which may contain a hyperlink). Defendants' Notice described in this Section shall:

1.   Clearly and Conspicuously inform the Existing Customer of the maximum Advertised Speed for the Internet Service Plan to which the Existing

Customer is subscribed; the maximum speed for which the Existing Customer is
Provisioned (if readily ascertainable); the range of Internet service speeds
Defendants have reason to believe the Existing Customer is likely to receive based
on the geographic location of the Existing Customer's residential address; and
how such speeds may impact the Existing Customer's access to various Internet
services, such as streaming or gaming;

2.    Offer the Existing Customer the options to (i) continue with the
current Internet Service Plan; (ii) discontinue the current Internet Service Plan
without incurring any additional fee associated with an Internet Service Plan, such
as an early termination fee, for cancelling the Internet Service Plan; and (iii) move
to another Internet Service Plan product tier in which the Existing Customer can
be Provisioned at a minimum of 90% of the maximum Advertised Speed, in the
form shown in Attachment B, or in such form approved in writing by the
Commission or its designee, and

3.    Not include anything in or with the Notice or email other than the
Notice in the form shown in Attachment B, or in such form approved in writing by
the Commission or its designee, including any billing statements or marketing
messages.

4.    In States in which Defendants and/or Defendants' subsidiaries or
affiliates have entered a settlement with a state regulator concerning Advertised

Speeds prior to the effective date of this Order, Defendants may, in place of the Notice in the form shown in Attachment B, or in such form approved in writing by the Commission or its designee, use the form of notice agreed to with such State to provide the consumer disclosures described in Section IV.A.1 of this Order, and the options to discontinue, change, or continue Internet Service Plans described in Section IV.A.2.  In other States, Defendants shall use the Notice in the form shown in Attachment B, or in such form approved in writing by the Commission or its designee.

B.     Defendants shall, for Existing Customers for whom the Provisioned Speed cannot be readily ascertained based on limitations in Frontier's facilities or system capabilities in the Existing Customer's area, issue a notice in the form shown in Attachment C, or in such form approved in writing by the Commission or its designee, via any method Defendants use to communicate with the Existing Customer (including but not limited to mail, e-mail, or text message, which may contain a hyperlink). Defendants' Notice described in this Section shall:

1.     Clearly and Conspicuously inform the Existing Customer of the maximum Advertised Speed for the Internet Service Plan to which the Existing Customer is subscribed; the fact that the Provisioned Speed cannot be readily ascertained based on limitations in Frontier's facilities or system capabilities; the range of Internet service speeds Defendants have reason to believe the Existing

16

Customer is likely to receive based on the geographic location of the Existing

Customer's residential address; and how such speeds may impact the Existing

Customer's access to various Internet services, such as streaming or gaming;

      2.     Offer the Existing Customer the options to (i) continue with the

current Internet Service Plan; (ii) discontinue the current Internet Service Plan

without incurring any additional fee associated with an Internet Service Plan, such

as an early termination fee, for cancelling the Internet Service Plan; and (iii) move

to another Internet Service Plan product tier in which the Customer can be

Provisioned at a minimum of 90% of the maximum Advertised Speed, in the form

shown in Attachment C, or in such form approved in writing by the Commission

or its designee; and

      3.     Not include anything in or with the Notice or email other than the

Notice in the form shown in Attachment C, or in such form approved in writing by

the Commission or its designee, including any billing statements or marketing

messages.

## V.    REQUIRED ACTIONS REGARDING CERTAIN NEW AND EXISTING CUSTOMERS

**IT IS FURTHER ORDERED** that, within 90 days after the entry of this Order, or by

October 31, 2022, whichever is later:

A.      Defendants shall, for Customers served by DSLAMs for which Congestion Reports indicate an average peak utilization of 90% or greater in any consecutive 3-month period, issue a notice via any method Defendants use to communicate with the Customer (including but not limited to mail, e-mail, or text message, which may contain a hyperlink) to those Customers within 60 days of the end of the 3-month period, informing them of: (1) the speed at which they are provisioned; (2) the range of Internet service speeds they are likely to achieve; and (3) that the limitations of those speeds may impact various Internet services, such as streaming or gaming.

B.      Defendants shall, when a New or Existing Customer subscribed to an Internet Service Plan with an Advertised Speed contacts Defendants with an inquiry or complaint that the Customer's Internet speed experienced is slower than the Advertised Speed and the Customer requests or it is otherwise clear from the communication that Defendants should investigate or take action to address service speed, respond to the Customer by, at Defendants' option: (a) initiating a review to respond to the Customer's complaint, such as through a Speed Assessment Procedure comparable to the one set forth in Exhibit B, and if the review reveals that the Customer is unable to receive at least 90% of the maximum Advertised Speed or higher, Defendants shall issue a notice in the form shown in Attachment D, or in such form approved in writing by the Commission or its designee; or (b) issuing a notice in the form shown in Attachment D, or in such form approved in writing by the Commission or its designee.  Defendants

shall issue the notice via any method Defendants use to communicate with the New or Existing Customer (including but not limited to mail, e-mail, or text message, which may contain a hyperlink). Defendants' Notice described in this Section shall:

1.    Offer the Customer the options to (i) continue with the current Internet Service Plan; (ii) discontinue the current Internet Service Plan without incurring any additional fee associated with an Internet Service Plan, such as an early termination fee; and (iii) move to another Internet Service Plan product tier in which the Customer can be Provisioned at a minimum of 90% of the maximum Advertised Speed; and

2.    Not include anything in or with the Notice or email other than the Notice in the form shown in Attachment D, or in such form approved in writing by the Commission or its designee, including any billing statements or marketing messages.

## VI.    MONETARY JUDGMENT AND CALIFORNIA SPECIFIC INJUNCTIVE TERMS

### *[By and Between Defendants and Plaintiff California Only]*

IT IS FURTHER ORDERED that:

A.    Defendants are ordered to pay eight million five hundred seventy-three thousand five hundred seventy dollars ($8,573,570) to the PEOPLE for investigation and litigation costs as well as pursuant to California Business and Professions Code Sections

17206 and 17536.  This amount is ordered to be paid within 30 days of the date of entry of this Stipulated Order.  The Riverside County District Attorneys' Office shall be solely responsible for dividing and distributing this amount between and among the PEOPLE according to agreements between them.  Defendants shall have no responsibility or liability arising from or relating to any (a) failure to allocate, divide or distribute these amounts, or (b) any dispute about the allocation, division or distribution of these amounts.

B.    Defendants are also ordered to pay an additional two hundred and fifty thousand dollars ($250,000) to the PEOPLE within 30 days of the date of the entry of this Stipulated Order.  These funds shall be distributed to any consumers, chosen by the PEOPLE in its sole discretion, whom the PEOPLE allege may have been harmed by the conduct alleged in the Complaint, which Frontier contends is no one.  Any portion of the $250,000 that is not distributed to consumers shall be paid by the PEOPLE to the Consumer Protection Prosecution Trust Fund.

C.    All payments required in conjunction with Section VI of this Stipulated Order shall be delivered to:

Deputy District Attorney Evan Goldsmith

Riverside County District Attorney's Office

Consumer Protection Unit

3960 Orange Street

Riverside, CA 92501

D.      Defendants and/or Defendants' subsidiaries or affiliates must deploy FTTP to 60,000 residential locations in their California service territory over the four years following the date of the entry of this Stipulated Order, an estimated investment of between $50,000,000–$60,000,000.  For purposes of this Agreement, FTTP means Defendants and/or Defendants' subsidiaries or affiliates will deploy fiber-optic facilities in an optical distribution network from its central offices to the public right of way, utility pole or easement immediately adjacent to the potential subscriber's premises, including residential and multi-dwelling units.  If a consumer subscribes to service, the fiber and optical distribution network will be connected with fiber-optic cable to the customer location demarcation point or optical network terminal.

E.      Defendants and/or Defendants' subsidiaries or affiliates shall make their reasonable best efforts to deploy FTTP to approximately 15,000 locations during each of the four years following the entry of this Stipulated Order.

F.      To the extent Defendants and/or Defendants' subsidiaries or affiliates deploy FTTP related to any of the following activities, these deployments shall not apply against the 60,000 location commitment in this Stipulated Order: (a) completing the deployment of Defendants' or Defendants' subsidiaries' or affiliates' fiber services to at least 350,000 residential and multi-dwelling and commercial locations pursuant to the April 2021 California Public Utilities Commission agreement, (b) completing the

Federal Communications Commission's Connect America Fund build out requirements and deployment milestones, (c) completing any Federal Communications Commission's Rural Digital Opportunity Fund build out requirements and deployment milestones, or (d) completing any state or local government grant for Internet broadband funding build out requirements.

G.      Failure to satisfy the Defendants' commitments to deploy fiber to a total of 410,000 locations in California, which includes the 350,000 locations pursuant to the April 2021 California Public Utilities Commission agreement and the additional 60,000 FTTP locations pursuant to this Stipulated Order, will be deemed a violation of this Stipulated Order and the commitment to deploy FTTP to the 60,000 locations.

H.      Beginning 12 months and concluding 36 months after the date of the entry of this Stipulated Order, Defendants shall credit one half the monthly internet charges to individual California customers for all months in which (a) Defendants fail to provision such customers at least 90% of the highest speed of the range of the tier level to which they are subscribed or higher, unless the customer has been advised in writing of the option to discontinue their Internet service plan or subscribe to another Internet service plan, if available, and the customer has not elected to discontinue or modify their Internet service plan, or (b) Defendants fail to provision such customer at least 100% of the speed at which they were informed they were provisioned.

I.      All correspondence and notices required in conjunction with Section VI of this Stipulated Order shall be delivered to:

Head Deputy Hoon Chun/Deputy District Attorney Steven Wang

Consumer Protection Division

Los Angeles County District Attorney's Office

211 W. Temple Street, 10th Floor

Los Angeles, CA 90012.

## VII.   ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendants obtain acknowledgments of receipt of this Order:

A.      Each Defendant, within 7 days of entry of this Order, must submit to the Commission and to California an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 5 years after entry of this Order, each Defendant must deliver a copy of this Order to: (1) all principals, officers, LLC managers and members, and the Defendant Frontier Communications Parent, Inc.'s Executive Chairman; (2) all employees having managerial responsibilities for conduct related to the subject matter of this Order; and all agents and representatives who have decision-making authority related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days

of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## VIII.  COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendants make timely submissions to the Commission and to California:

A.     One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:  Each Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission and California may use to communicate with Defendants; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant; (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission and to California.

B.      For 7 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following: Each Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of any Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.      Each Defendant must submit to the Commission and to California notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.      One year after entry of this Order and for 7 years thereafter, Defendants must prepare an annual performance report that sets forth the following information for each state in which Defendants have done business during that period.  Defendant must prepare and submit each such report to the Commission within 14 days of completion:

1.      All Internet Service Plans that Defendant offered, including each name under which Defendant offered such Internet Service Plan (*e.g.*, "Ultra," "Core"), and the maximum Advertised Speed associated with such Internet Service Plan;

2.      The number of former Customers who are no longer Existing Customers and the number of New Customers who subscribed to each Internet Service Plan identified in paragraph VIII.D.1 above;

3.      The numbers of those New Customers Provisioned at any time for less than the maximum Advertised Speed for the Internet Service Plan to which the New Customer is subscribed;

4.      The number of Customers whose Provisioned speed cannot be readily ascertained;

5.      The number of Customers served by DSLAMs for which Congestion Reports indicated an average peak utilization of 90% or greater in any consecutive 3-month period;

6.      The number of Customers to which Defendant has sent each type of notice pursuant to Sections II, III, IV, and V of this Order; and

7.      The number of locations and locations by census blocks or available addresses to which Defendants have deployed fiber to the premises (FTTP) broadband Internet services pursuant to Section VI of this Order during the reporting period.

E.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United

States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

F.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Frontier Communications, Matter No. X210024.

G.      Unless otherwise directed by a California representative in writing, all submissions to California pursuant to this Order must be delivered to Hoon Chun, Assistant Head Deputy District Attorney or his successor in that position, Consumer Protection Division, Los Angeles County District Attorney's Office, 211 W. Temple Street, 10th Floor, Los Angeles, CA 90012.

## IX.    RECORDKEEPING

IT IS FURTHER ORDERED that Defendants must create certain records for 7 years after entry of the Order, and retain each such record for 5 years.  Specifically, Defendants must create and retain the following records in connection with Internet Service Plans:

A.      Accounting records showing the revenues from all goods or services sold;

B.     Personnel records showing, for each employee providing services, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.     All written records of consumer complaints and refund requests, relating to the Internet Service Plan's speed, whether received directly or indirectly, such as through a third party, and any response;

D.     All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission, and a representative copy of each notice provided to Customers pursuant to this Order;

E.     A representative copy of each materially different advertisement or other marketing material for the sale of Internet Service Plans with Advertised Speed;

F.     Documents sufficient to describe each materially different method by which Defendants form a reason to believe what Internet Service Plan it is able to offer consumers based on the geographic location of their residential addresses; and

G.     Documents sufficient to describe each materially different Speed Assessment Procedure used by Defendant pursuant to Sections II.D, II.E, III.B.1, and V.B of this Order.

## X.     COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendants' compliance with this Order, and any failure to transfer any assets as required by this

Order:

A.    Within 14 days of receipt of a written request from a representative of the Commission or California, Defendants must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission and California are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Order, the Commission and California are authorized to communicate directly with each Defendant.  Defendants must permit representatives of the Commission and California to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.    The Commission and California may use all other lawful means, including posing, through their representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XI.   MATTERS COVERED BY THIS ORDER CONCERNING CALIFORNIA CLAIMS

### *[By and Between Defendants and Plaintiff California Only]*

A.      IT IS FURTHER ORDERED that, upon full and complete performance of Defendants' obligations under Section VI, this Order shall have a res judicata effect as to and shall bar any action by California against Defendants and their direct and indirect subsidiaries and affiliates, and all of their predecessors, successors and assigns and any partners, directors, principals, officers, employees, and agents, from all claims that (a) arise from or relate to California's investigation of Defendants or the subject matter contained in the Complaint, and (b) are based on conduct that occurred prior to issuance of this Stipulated Order.

B.      Nothing herein precludes or affects California's right to seek compliance with this Order, or to seek enforcement or penalties under Cal. Business and Professions Code section 17200 et seq. for any violations of this Stipulated Order.

## XII.   RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED.**

Dated:  May 6, 2022  , ~~2021~~

Hon. R. Gary Klausner
UNITED STATES DISTRICT JUDGE

## **Exhibit A – Example of Compliant Speed Assessment Procedure for New Customers**

For the purposes of compliance with Sections II.D and III.B.1, the following is an illustrative example of a Speed Assessment Procedure that would provide reason to believe that Defendant can provide service within 10% of the maximum Advertised Speed.

- In order to confirm New Customer eligibility to receive a given speed tier at service activation for new or upgraded service, a copper acceptance test, including xDSL acceptance testing, will be conducted at service activation.

- The copper acceptance test should reflect that the Customer location network interface device (NID) can achieve a speed within 90% of the maximum Advertised Speed, or higher.

- If the copper acceptance test does not indicate that the Customer can achieve a speed within 90% of the maximum Advertised Speed or higher, the technician will advise the Customer of the maximum speed they are able to receive.  If the Customer elects to continue with activation, the technician will obtain affirmative consent of that election.

## <u>Exhibit B – Example of Compliant Speed Assessment Procedure to Respond to Speed Complaints</u>

For the purposes of compliance with Sections II.E and V.B, the following is an illustrative example of a Speed Assessment Procedure that resolves a speed complaint.

- Frontier will train customer service staff to respond to Customer complaints regarding service speed that is lower than the Advertised Speed.

- First, Frontier will initiate a review to respond to the Customer's speed complaint remotely. In some cases, Frontier may be able to verify the Customer's speed remotely and confirm that the Customer location network interface device (NID) is able to receive at least 90% of the maximum Advertised Speed or higher. If Frontier resolves the Customer's complaint or indicates that the Customer location NID is able to receive at least 90% of the maximum Advertised Speed or higher, Frontier may determine that no further action is required.

- Second, Frontier may, at its option, offer to (i) cancel the Customer's service subject to the terms of their then-existing contract (if any) or, in the case of Existing Customers, after waiving any applicable fee for cancelling the Internet Service Plan, such as an early termination fee, or (ii) move the Customer to the next lower Internet Service Plan product tier, or (iii) dispatch on-site technical support.

- If Frontier elects to dispatch on-site technical support, Frontier will waive the fee for on-site technical support once per Customer. During the on-site visit to address a speed complaint, the technician will perform copper acceptance testing, including xDSL acceptance testing, comparable to that performed at service activation (*see* Exhibit A). If the technician is unable to confirm speed capabilities at 90% of the maximum Advertised Speed or higher at the Customer NID, the Customer will be provided with a right to (i) cancel without any fee, or (ii) move the Customer to the next lower Internet Service Plan product tier, or (iii) the Customer may elect to continue service.

ATTACHMENT A
FTC *et al.* v. FRONTIER COMMUNICATIONS CORP. *et al.*
800-XXX-XXXX

**Frontier letterhead**

**Date**

Dear Jane/John P. Customer:

You recently subscribed to Frontier's [Name of plan] Internet Service Plan and we are providing you with information about your service.

**Account details:**

| | |
|---|---|
| Customer Name: | Jane Doe |
| Account Number: | [insert here account # - billing phone number] |
| Service Address: | 111111 Main Street, ___ |
| Your plan maximum download speed: | xxx Mbps <purchased download speed> |
| Your download provisioned speed: | zzz Mbps |
| Expected range of speed: | |

Your plan has a maximum download speed of [xxx] megabits per second (Mbps). We've provisioned or set the speed for the Internet service at your address at [zzz] Mbps and you're likely to get speeds in the range of [yyy] to [zzz] Mbps.

The actual Internet speed at your service address, and your ability to access various Internet services / sites (e.g., streaming or gaming), will vary as a result of your provisioned speed and additional factors like (a) connecting to Wi-Fi; (b) multiple users or devices on the same account; (c) the capacity, performance or limitations of your inside wiring, computer, equipment, device(s) or modem; and/or (d) congestion and other traffic on our network or the Internet.

Additional information regarding internet service is available on Frontier's internet disclosure page located at  Frontier.com/InternetDisclosures. Please also see our terms and conditions for residential internet services located at Frontier.com/ResInternetterms.

Because your internet speed is set at a speed less that the maximum speed in your service plan, you have three options:

1. **Keep your current plan.** If you want to keep your current plan, you don't have to do anything.

2. **Change your plan.** You can switch to another Internet plan.

3. **Cancel your plan.** You can cancel your Internet service without any charge to you.

To make changes to your Internet service, contact us at frontier.com or 1-800-123-4567.

Thank you for being a Frontier customer!

Sincerely,

Frontier Communications

ATTACHMENT B
FTC *et al.* v. FRONTIER COMMUNICATIONS CORP. *et al.*
800-XXX-XXXX


**Frontier letterhead**

**Date**

Dear Jane/John P. Customer:


You subscribe to Frontier's [Name of plan] Internet Service Plan and we are providing you with information about your service.

**Account details:**

Customer Name:                         Jane Doe

Account Number:                        [insert here account # - billing phone number]

Service Address:                       111111 Main Street, ___

Your plan maximum download speed:      xxx Mbps <purchased download speed>

Your download provisioned speed:       zzz Mbps

Expected range of speed:


We've provisioned or set the speed for the Internet service at your address at [zzz] Mbps and you're likely to get speeds in the range of [yyy] to [zzz] Mbps.


The actual Internet speed at your service address, and your ability to access various Internet services / sites (e.g., streaming or gaming), will vary as a result of your provisioned speed and additional factors like (a) connecting to Wi-Fi; (b) multiple users or devices on the same account; (c) the capacity, performance or limitations of your inside wiring, computer, equipment, device(s) or modem; and/or (d) congestion and other traffic on our network or the Internet.


Additional information regarding internet service is available on Frontier's internet disclosure page located at Frontier.com/InternetDisclosures. Please also see our terms and conditions for residential internet services located at Frontier.com/ResInternetterms.


Because your internet speed is set at a speed less that the maximum speed in your service plan, you have three options:

1. **Keep your current plan.** If you want to keep your current plan, you don't have to do anything.

2. **Change your plan.** You can switch to another Internet plan.

3. **Cancel your plan.** You can cancel your Internet service without any charge to you.

To make changes to your internet service, contact us at Frontier.com or 1-800-123-4567.

Thank you for being a Frontier customer!

Sincerely,

Frontier Communications

ATTACHMENT C
FTC *et al.* v. FRONTIER COMMUNICATIONS CORP. *et al.*
800-XXX-XXXX

**<u>Frontier letterhead</u>**

**<u>Date</u>**

You subscribe to Frontier's [Name of plan] Internet Service Plan and we are providing you with information about your service.

**Account details:**
| | |
|---|---|
| Customer Name: | Jane Doe |
| Account Number: | [insert here account # - billing phone number] |
| Service Address: | 111111 Main Street, ___ |
| Your plan maximum download speed: | xx Mbps <purchased download speed> |
| Expected range of speed: | |

Because of our system limitations, Frontier is not able to readily determine the maximum speed for the Internet service at your address, but you're likely to get speeds in the range of [yyy] to [zzz] Mbps.

The actual Internet speed at your service address, and your ability to access various Internet services / sites (e.g., streaming or gaming), will vary as a result of your provisioned speed and additional factors like (a) connecting to Wi-Fi; (b) multiple users or devices on the same account; (c) the capacity, performance or limitations of your inside wiring, computer, equipment, device(s) or modem; and/or (d) congestion and other traffic on our network or the Internet.

Additional information regarding internet service is available on Frontier's internet disclosure page located at Frontier.com/InternetDisclosures.  Please also see our terms and conditions for residential internet services located at https://Frontier.com/ResInternetterms.

Because we are not able to determine whether your internet speed is set at a speed less that the maximum speed in your service plan, you have three options:

1. **Keep your current plan.** If you want to keep your current plan, you don't have to do anything.

2. **Change your plan.** You can switch to another Internet plan.

3. **Cancel your plan.** You can cancel your Internet service without any charge to you.

To make changes to your plan, contact us at Frontier.com or 1-800-123-4567.

Thank you for being a Frontier customer!

Sincerely,

Frontier Communications

ATTACHMENT D
FTC *et al.* v. FRONTIER COMMUNICATIONS CORP. *et al.*
800-XXX-XXXX

**Frontier letterhead**

**Date**

Dear Jane/John P. Customer:

Account Number:     [insert here account # - billing phone number]
Service Address:       111111 Main Street, ___

Thank you for your recent complaint about the Internet service speed on your Frontier Internet Service Plan. Unfortunately, we were unable to fully resolve your Internet speed concerns.  As a result, you may:

1. **Keep your current plan.** If you want to keep your current plan, you don't have to do anything.

2. **Change your plan.** You can switch to another Frontier Internet service plan.

3. **Cancel your plan.** You can cancel your Internet service without any charge to you.

To make changes to your Internet service, contact us at frontier.com or 1-800-123-4567.

Thank you for being a Frontier customer!

Sincerely,

Frontier Communications